Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,D. Massachusetts.
        F & D TOOL COMPANY, INC., Plaintiff
                          v.
        SLOAN VALVE COMPANY, INC. and Federal
                Insurance Company, Defendants
                  **No. Civ.A. 01-30154-MAP.**

                       Oct. 17, 2002.

    MEMORANDUM REGARDING DEFENDANTS'
       MOTIONS FOR SUMMARY JUDGMENT

PONSOR, J.

                    I. INTRODUCTION

*1 Plaintiff F & D Tool Company, Inc. ("F & D") has sued Sloan Valve Company, Inc. ("Sloan"), and Federal Insurance Company ("Federal") for water damage to its business property and machines when a toilet overflowed due to an allegedly defective Sloan-made toilet component. F & D contends 1) that Sloan was negligent in designing and manufacturing their Flushmate toilet; 2) that Sloan failed to adequately warn F & D of the dangerous propensities of the Flushmate; 3) that Sloan breached its implied warranty of merchantability under Mass. Gen. Laws ch. 106 § § 2-314 through 2-318; 4) that Sloan violated Mass. Gen. Laws ch. 93A; and 5) that Federal, Sloan's insurer, violated Mass. Gen. Laws chs. 93A and 176D by failing to make a fair and reasonable offer of settlement. Sloan has moved for summary judgment on Counts One through Four and Federal has moved for summary judgment on Count Five. For the reasons set forth below, Sloan's and Federal's motions for summary judgment will be ALLOWED.

                       II. FACTS

The facts, viewed in the light most favorable to the plaintiff, are as follows. On November 17, 1999, a toilet on F & D's business property overflowed and caused water damage to F & D's manufacturing facility and machines. Plaintiff alleges that the overflow of water was caused by a faulty component in the toilet manufactured by Sloan. On December 29, 1999, J.E. Hill & Associates., Inc. ("Hill") provided a report of their inspection of the water damages suffered by F & D to F & D's insurer, American Motorist Insurance Company ("AMICO"). Hill's inspection concluded that there was "very little damage to the equipment claimed damaged. All machines and accessories are without a doubt repairable." (Docket No. 14, Exhibit 1 at 3).

On April 6, 2000, F & D submitted a proof of loss statement to AMICO for $720,834.64; AMICO rejected this statement. On April 13, 2000, Hill estimated the replacement cost of the damaged F & D machines at $103,750.00, the actual cash value of the machines at $25,009.00 and the repair cost at $84,000.00.

F & D agreed to accept $156,500.00 for its losses from AMICO on October 4, 2000. The parties' "Compromise and Settlement Agreement and Full Release" provides in part that,
The parties hereto desire and intend to settle fully and finally any and all claims and demands and all potential claims and demands F & D has or may have arising out of the water loss and/or the Policy;
F & D and AMICO recognize and agree that the consideration expressed herein is a fair compromise of all claims relating in any way to the water loss and/or Policy;

(Docket No. 18, Exhibit B at 1). The agreement also addressed AMICO's release, stating that in consideration for AMICO's payment to F & D, plaintiff released AMICO and its successors from all claims. This language reads:F & D agrees to and hereby releases, acquits and forever discharges AMICO, as well as AMICO's ... successors, and assigns ... from any and all past, present, future, and unknown claims, actions and suits ... losses and damages ... F & D ever had, has or ever can, shall or may have ... by reason of any and all matters, claims, or contentions arising from or concerning in any way the water loss and/or the Policy.
*2 Nothing contained in this Agreement shall be deemed to inure to the benefit of any person or entity which is not a Party to this Agreement. No person or entity other than the Parties hereto shall have any legally enforceable rights under this Agreement. All rights of action for any breach of the Agreement are hereby reserved to the Parties hereto.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10736-NMG    Document 24-3    Filed 11/21/2005    Page 2 of 5

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d)

(Docket No. 18, Exhibit B at 3).

F & D's president contends that he did not believe that this settlement actually reflected his company's entire loss from the water damage. He now states that he only agreed to the AMICO settlement because it provided F & D the money to allow the business to continue to operate.

Following the settlement with F & D, AMICO sought recovery of the payments it made to F & D from Federal, Sloan's insurer, on the theory that the real cause of the loss was the defective Flushmate. On May 17, 2001, AMICO and Federal settled; Federal paid AMICO $130,000.00 and the parties agreed on a "Release of all Claims." F & D was not a party to this release and refused to sign a consent to the AMICO and Federal settlement. F & D commenced this action against both Sloan and Federal on August 17, 2001.

In response to discovery, the plaintiff has only produced invoices for repairs, purchases of new machines and expenses in connection with the water damage totaling $140,941.41. In other words, F & D's documented losses are *less* that the $156,500.00 it received from AMICO. Moreover, Philip Duda, ("Duda") president of F & D and his employees estimated that $35,750.00 of the $140,941.41 comprised the value of labor and repairs performed by F & D employees themselves. In addition, some of the receipts supporting the $140,941.41 figure were for expenses incurred *prior to* the water overflow on November 17, 1999. In his deposition Duda explained that such expenses reflected previously purchased parts used in the ordinary course of maintenance at the facility that had to be used to repair the machines damaged on November 17, 1999.

Plaintiff has anchored its claim for damages above the $156,500.00 on two estimates from Continental Machinery Company, Inc ., ("Continental") for the total cost of cleaning and repairing the damaged F & D machines. Continental's first December 29, 1999 estimate was $552,383.00. The second revised estimate of April 7, 2000 was $281,585.00.

During the hearing on the defendants' motions for summary judgment on June 28, 2002, the court indicated that both of these expert estimates were inadmissable hearsay and, therefore, failed to meet the standard of Fed.R.Civ.P. 56(e), which requires that, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The court gave the plaintiff additional time to submit affidavits from Continental that would comport with Fed.R.Civ.P. 56(e).

*3 On July 12, 2002, plaintiff submitted an affidavit from Jeff Williams of Continental. The affidavit states only that Continental "stands by" its original estimate of $582,383.00, maintains that this estimate is accurate and is ready to contract for repair at this price. The affidavit also states that Continental prepared the second estimate of $281,585.00 for settlement and negotiation purposes and did not take into account additional latent damages.

F & D has not retained Continental for any work at F & D and Duda has testified that "[he] did not hire Continental Machinery to repair the machines, and [he] would not do that." Duda stated that the repairs contemplated in Continental's estimate would, if performed, necessitate shutting down F & D's business for six months to a year and that the company could not afford such a suspension in business.

### III. DISCUSSION

#### A. *Standard of Review*

A motion for summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). According to the Supreme Court, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue is one "that a reasonable jury could resolve ... in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue. *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). Rule 56(e) requires the opposing party to meet this burden with admissible evidence. "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Likewise, "the First Circuit will reject responses by nonmovants that adduce statements not based on personal knowledge or that adduce conjectural or conclusory allegations." *Nicholson v. Promotors on Listings,* 159 F.R.D. 343, 348 (D.Mass.1994).

B. *Federal's Motion for Summary Judgment*

*4 Federal is charged only in Count V. Plaintiff has alleged that Federal violated Mass. Gen. Laws chs. 93A and 176D by failing to make a fair and reasonable settlement offer when liability was reasonably clear. On March 22, 2001, plaintiff sent a demand letter to Federal stating that its offer of $150,000.00 was unfair and deceptive under Mass. Gen. Laws chs. 93A and 176D. Plaintiff argues that a reasonable person would conclude that since Sloan made a repair kit to fix the component that caused the flood, it knew about the part malfunctioning and is therefore liable for any damages caused by the defective part. More significantly, plaintiff asserts that the agreement and release between AMICO and F & D does not bar the plaintiff from seeking damages against Sloan.

Federal responds that Sloan's liability to F & D is not only *not* clear, but is, in fact, nonexistent, given the agreement and release between AMICO, and F & D's full compensation for its loss though its settlement with AMICO.

The Massachusetts Consumer Protection Act makes unlawful any, "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce...." Mass. Gen. Laws ch. 93A § 2(a). Sections 9 and 11 of ch. 93A provide private causes of action for violations of § 2, but for different classes of plaintiffs. A plaintiff under § 9 is, "[a]ny person, other than a person entitled to bring action under section eleven of this chapter ..." A plaintiff under § 11 is, "[a]ny person who engages in the conduct of any trade or commerce ..." All that is required for a plaintiff to fall within the ambit of § 11 is some transaction in a business context. *International Fidelity Ins. Co. v. Wilson,* 387 Mass. 841, 852 (1983).

The relationship between plaintiff and defendants was commercial. F & D has brought a claim for property damage to its place of business as a result of a component manufactured by Sloan. F & D's claim is not a consumer claim but a "business against business 93A claim." *DiVenunti v. Reardon,* 37 Mass.App.Ct. 73, 79 (1994). Therefore, 93A § 11 applies here, not § 9. Nor does 93A § 3 apply here, since it only covers exemptions to 93A, none of which apply in this situation.

In order to establish that Federal violated 93A § 11, F & D must show that Federal's actions were so objectionable as to "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce," *Levings v. Forbes & Wallace, Inc.,* 8 Mass.App.Ct. 498, 504 (1979), or had a "rancid flavor of unfairness," *Atkinson v. Rosenthal,* 33 Mass.App.Ct. 219, 226 (1992). Additionally, Massachusetts courts "focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L. c. 93A fairness determination." *Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc.,* 420 Mass. 39, 42 (1995).

Here, the uncontroverted facts do not support a 93A § 11 violation. Federal had previously paid AMICO, F & D's insurer, $130,000.00 for damage arising from the toilet overflow. F & D was not able to produce admissible evidence establishing that its costs associated with the water damage were more than $140,941.41. In light of these facts, Federal's settlement offer of $150,000.00 to the plaintiff was, in fact, generous. Federal's refusal to settle again-and for more-cannot reasonably be viewed as so unfair as to rise to the level of unsavory behavior that is the target of this statute.

*5 Chapter 176D addresses unfair or deceptive acts or practices in the business of insurance. 176D § 3(9)(f) states, "An unfair claim settlement practice shall consist of any of the following acts or omissions: Failing to effectuate prompt, fair and equitable settlements of claims in which liability has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10736-NMG   Document 24-3   Filed 11/21/2005   Page 4 of 5

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d)

become reasonably clear ." Mass. Gen. Laws ch. 176D § 3(9)(f). An insurer is obligated to settle under this statute when "liability becomes reasonably clear." *Clegg v. Butler,* 424 Mass. 413, 421 (1997). Whether liability is reasonably clear is determined by an objective standard; the appropriate test is "whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." *Demeo v. State Farm Mut. Auto. Ins. Co.,* 38 Mass.App.Ct. 955, 956-57 (1995).

Applying the objective test set out in *Demeo* here, no reasonable person could conclude that Federal was liable to F & D under ch. 176D. Federal reasonably concluded that AMICO and F & D's agreement meant what it stated: that F & D released all claims and potential claims associated with the water damage. Federal paid $130,000.00 to AMICO on its subrogation claim. A reasonable fact finder could not objectively conclude that Federal's liability was reasonably clear.

The plaintiff argues that the agreement between AMICO and F & D did not discuss subrogation and that the agreement reserved F & D's right to recover from Sloan. Generally in Massachusetts, however, when an insurer pays an insured's claim under its insurance contract, any rights of action the insured may have against the alleged tortfeasor will be transferred to the insurer. *Liberty Mutual Ins. Co. v. National Consolidated Warehouses, Inc.,* 34 Mass.App.Ct. 293, 296 (1993). An insurer who pays the insured for the entire loss suffered may bring a subrogation action in its own name, or on behalf of an insured against a tortfeasor. *Travelers Ins. Co. v. Graye,* 358 Mass. 238, 240-241 (1970). But where an insurer reimburses the insured partially, "both insurer and insured would be the real parties in interest with the insurer a subrogee to the extent of its payment." *Liberty Mutual,* at 297, quoting, 16 Couch, Insurance, § 61:26 (rev. ed.1983).

Here, the insurer, AMICO did not pay the insured F & D for only part of its loss, but for F & D's *entire* loss. The parties' agreement clearly stated that AMICO and F & D "desire and intend to settle fully and finally any and all claims" F & D had or would have arising out of the water loss. (Docket 18, Exhibit B at 1). Although the plaintiff argues that it did not *believe* that the settlement reflected all of the loss it suffered, the plaintiff nevertheless agreed and accepted this amount. The agreement obviously did not indicate that AMICO's payment only covered part of the losses that F & D suffered. Put simply, F & D cannot inherit a claim it has already settled.

*6 Apart from its inherent unfairness, plaintiff's claim flies in the face of the presumption in Massachusetts against claim splitting.

[T]he general rule is that a single negligent action causing damage to an individual can be the basis of only one cause of action in his [or her] behalf which cannot be divided or split into ... separate suits, so that a recovery for part of the loss will bar subsequent suit to recover for other elements of damage.

*Liberty Mutual* at 297, quoting 16 Couch, Insurance, § 61:206. An exception to this rule is recognized only when a tortfeasor expressly or impliedly acquiesces to splitting the claim. *Id.* at 297. In *Liberty Mutual* an insured lost property in a fire and was paid its policy limit by the insurer. Both the insured and insurer brought separate actions against the tortfeasor. The tortfeasor and the insured settled and the tortfeasor brought a motion for summary judgment against the insurer. Denying the motion for summary judgment, the court held that the tortfeasor had "acquiesced" to the splitting of the claim through the release and settlement agreement between the insured and the tortfeasor. The relevant agreement in *Liberty Mutual* explicitly stated, "[i]t is expressly understood that this Release shall not affect in any way, the rights of [insurer] in its claims for negligence against [tortfeasor]." *Id.* at 298.

Here, the tortfeasor, Sloan, never acquiesced to the splitting of the claim arising from the water damage, and therefore, the rule *against* claim splitting, and not the exception, applies. The agreement between AMICO and Sloan is conclusive. As the release stated, AMICO,

hereby forever release[s] and discharge[s], Sloan ... from any and all actions, suits, controversies and proceedings for reimbursement or payment of any monies, expenses, costs ... including ... those which arise directly or indirectly out of or relate directly or indirectly to a first-party claim brought by F & D Tool Company against [AMICO] ... said first-party claim was settled by [AMICO] ... this payment was made in full and final settlement of F & D Tool Company's claim for economic damages and or loss allegedly incurred as a result of [the water loss].

(Docket No. 18, Exhibit C at 1-2). In sum, as a matter of law, F & D has no claim under either ch. 93A or ch. 176D against Federal.

*C. Defendant Sloan's Motion for Summary Judgment*

Case 1:04-cv-10736-NMG   Document 24-3   Filed 11/21/2005   Page 5 of 5

Not Reported in F.Supp.2d                                              Page 5
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d)

F & D's direct claim against Sloan fails due to the absence of any cognizable evidence of damage beyond the $156,500.00 it has already received. As noted, F & D has presented documentation totaling no more than $140,951.21 for costs associated with the water damage.

The estimates for repair from Continental for $552,383.00 and $281,585.00, as originally submitted, were inadmissible. In an effort to correct this deficiency, plaintiff submitted the affidavit of Jeff Williams of Continental. Although the affidavit to some extent cures the hearsay problem, other fatal defects remain.

*7 Under Fed.R.Civ.P. 56(e), "expert opinion is admissible and may defeat summary judgment only where it appears that the affiant is competent to give an expert opinion." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990). "It is fundamental that expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion ... [thus] an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation." Damon v. Sun Co., 87 F.3d 1467, 1474 (1st Cir.1996) (internal quotation marks omitted).

The affidavit of Jeff Williams of Continental does not meet the standard of Fed.R.Civ.P. 56(e), and therefore the evidence of damages the plaintiff has proffered is not sufficient to defeat Sloan's motion for summary judgment. For example, the plaintiff has not offered any evidence concerning the methodology of the calculation of the two estimates except to indicate that Williams conducted a "visual inspection" of F & D. This deficiency is especially glaring given the enormous difference between the two estimates. Nor does the affidavit, or any other evidence the plaintiff has presented, provide the court with information concerning the qualifications or expertise of Continental, making it impossible for the court to determine if Continental is "qualified as an expert by knowledge, skill, experience, training or education ..." Fed.R.Evid. 702. In sum, on these facts, in order to survive defendant's motion, plaintiff was obliged to proffer much more than the casual effort made here in support of the claimed damages.

Since F & D cannot point to facts of record adequate to support any claims for damages beyond what it has a already received, Sloan's Motion for Summary Judgment must be allowed.

IV. CONCLUSION

For the reasons detailed above, defendants' motions for summary judgment are hereby ALLOWED.

A separate order will issue.

ORDER

For the reasons stated in the accompanying Memorandum, defendant Sloan' Motion for Summary Judgment (Docket No. 10) and defendant Federal's Motion for Summary Judgment (Docket No. 13) are hereby ALLOWED.

It is so Ordered.

D.Mass.,2002.
F & D Tool Co., Inc. v. Sloan Valve Co., Inc.
Not Reported in F.Supp.2d, 2002 WL 31371963 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 3:01CV30154 (Docket) (Aug. 17, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.