Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1875851 (C.D.Cal.), 2002 A.M.C. 411
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Briefs and Other Related Documents

United States District Court, C.D. California.
HSBC INSURANCE LIMITED, a corporation
Plaintiffs,
v.
SCANWELL CONTAINER LINE, LTD.; Scanwell International, Inc. a corporation; SCL Shipping (Lax), Inc., a corporation; Nova Container Freight Station; Nova Transportation Inc., a corporation; and Nova Overseas, Inc. a corporation. Defendants.
**No. 00-CV-5729.**

July 25, 2001.

JUDGMENT

WILSON, J.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

*1 Judgment is entered for the Defendants.
IT IS SO ORDERED.

ORDER

I. BACKGROUND

Defendant Scanwell was hired to transport clothing from Hong Kong to Los Angeles via Long Beach. For each shipment Scanwell issued a separate Bill of Lading with identical terms and conditions stated on the reverse. Scanwell then consolidated the three shipments and delivered the cargo by steamship to the Port of Long Beach. In order to transport the goods to Los Angeles, Scanwell subcontracted with co-Defendant Nova Container Freight Station ("Nova CFS"). At Nova CFS' request, Defendant Nova Transportation Services, Inc. ("Nova Transportation") picked up the container at the Port of Long Beach. Thereafter the cargo was stolen. It is unclear from the record whether the goods were stolen before or after they reached the Nova CFS' warehouse. Plaintiff, HSBC, insured the cargo for their losses and initiated the instant action.

In a prior summary judgment order dated January 17, 2001, the Court held that the one year statute of limitations in 46 U.S.C. § 1303(6), Carriage of Goods by Sea Act ("COGSA") did not bar Plaintiff's claim because it was overriden by Clause 6.6 of the contract. In a subsequent summary judgment order dated May 2, 2001, the Court held that according to Clause 6.6, the Court must look to Nova's tariffs, contracts of carriage (with Scanwell), and compulsorily applicable law to assess the Defendants' liability.

On May 10, 2001, trial commenced and the parties offered evidence on Nova's contract with Scanwell and damages.

II. DISCUSSION

In the instant case, Plaintiff has failed to prove its damages in two respects. First, it has failed to offer admissible evidence establishing the amount it paid its insured for the lost goods. Secondly, it has tailed to introduce admissible evidence establishing the value of the goods. Moreover, even if Plaintiff had established damages, his recovery would be limited based on the course of dealing between Scanwell and Nova.

A. *Plaintiff has Failed to Offer Admissable Evidence Establishing Damages*

To prevail on its claim for breach of contract against either Defendant, Plaintiff must prove (1) that the goods were delivered to the carrier in full; (2) the carrier failed to deliver the goods; and (3) damages. *Missouri Pacific R. Co. v. Elmore & Stahl, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).* The burden of proving damages lies with the Plaintiff. *Great American Trading Co. v. American President Lines, Ltd., 641 F.Supp. 396, 402 (N.D.Cal.1986).* Where a shipment is lost or destroyed, the market value at its destination is the proper measure of the actual loss. *Neptune Orient Lines v. Burlington Northern & Stante Fe Railway Co., 213 F.3d 1118 (9th Cir.2000).*

For reasons set forth below, Plaintiff has failed to meet his burden of proving damages.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2001 WL 1875851 (C.D.Cal.), 2002 A.M.C. 411
**(Cite as: Not Reported in F.Supp.2d)**

1. *Plaintiff Has Not Offered Admissable Evidence Establishing Payment to Its Insured (the cargo owners).*

An insurance company plaintiff only has standing to sue as subrogee when it has paid its insured. *Smith By & Through Smith v. Parks Manor*, 197 Cal.App.3d 876, 879 (1988). Plaintiff contends that it paid its insured $72,920.92 for the loss of the cargo. Plaintiff however did not introduce any admissible evidence supporting this allegation at trial. The only documents provided by Plaintiff that support this contention are subrogation receipts. The receipts and an accompanying declaration by Plaintiff's assistant claims manager in Hong Kong were attached to an ex parte motion. Plaintiff filed the ex parte motion two days before trial.

*2 The subrogation receipts purport to establish that Plaintiff paid its insured a total of 72,920.92 for the goods lost on the three Bills of Lading. These receipts, however are not admissible because they were not properly authenticated. F.R.E. 803(6) permits business record authentication either via live testimony or self-authentication under F.R.E. 902(11). FN1 There was no live testimony at trial so the records are only admissible if they are self-authenticating under F.R.E. 902(11). F.R.E. 902(11) requires that the custodian or other qualified witness submit a declaration for each receipt stating that the receipt:

> FN1. As noted above, the subrogation receipts were never offered into evidence at trial. For purposes of this analysis, the Court is treating the pre-trial motion in limine as an offer.

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters,
(B) was kept in the course of regularly conducted activity; and
(C) was made by the regularly conducted activity as a regular practice.

Additionally, F.R.E. 902(11) requires that the opposing party be given notice that the documents will be offered into evidence:
A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Here there was insufficient notice: the Plaintiff only provided the receipts and declaration shortly before trial so there was insufficient time for the opposing parties to challenge them. Thus, the receipts are not admissible under the business records rule.

Plaintiff could also have sought to introduce the receipts under the foreign records rule. Pursuant to F.R.E. 902(12), a duplicate of a foreign record of regularly conducted activity such as those described in F.R.E. 803(6) may be self authenticating if it is accompanied by a written declaration by its custodian or other qualified person certifying that the record
(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters,
(B) was kept in the course of regularly conducted activity; and
(C) was made by the regularly conducted activity as a regular practice.

Moreover, to fall within F.R.E. 902(12), the declaration must be signed in a manner that, if falsely made, would subject the maker to criminal penalty under the laws of the country where the declaration is signed. Furthermore, the party intending to offer the record into evidence under Rule 902(12) must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer of the record into evidence to provide an adverse party with a fair opportunity to challenge its admissibility.

In this case, Plaintiff has failed to comply with several of the requirements of Rule 902(12). First, Plaintiff did not offer the declaration or subrogation receipts into evidence, but merely attached it to a motion in limine filed two days prior to trial. Secondly, Plaintiff did not provide Defendants with sufficient notice of its intention to use the receipts and declaration at trial. Finally, the declaration does not on its face establish that it subjects the declarant to criminal penalty under the laws of the country where it was signed. The declaration states that the declarant is Plaintiff's claims manager in Hong Kong, but does not state the country where the declaration

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 1875851 (C.D.Cal.), 2002 A.M.C. 411
**(Cite as: Not Reported in F.Supp.2d)**

was signed. It then goes on to state that the declarant is subject to penalty of perjury under the laws of the United States. It does not state that the declarant is signing under penalty of perjury in the country in which the declaration was signed. The Court holds that this declaration does not comply with Rule 902(12).

*3 Plaintiff has not offered any other evidence establishing the amount it paid to its insured. Thus, it has failed to establish that it has the right to sue as a subrogee.

*2. Plaintiffs also Failed to Introduce Admissible Evidence Establishing the Market Value of the Cargo*

Plaintiff sought to prove the market value of the stolen cargo in two ways. First, it offered invoices by the manufacturers of the cargo, Yangtzetzekiang Garment Manufacturing Co. and Hong Kong Knitters, Ltd. These invoices, show that the value of the goods in Los Angeles totaled 72,920.92. Second, Plaintiff offered the testimony of an expert surveyor, Captain S.M. Wadhwani ("Wadhwani"), at trial. Wadhwani testified that he recieved the invoices and the Bills of Lading issued by Scanwell to the cargo owners. After comparing the two, Wadhwani concluded that the goods referred to on the invoices were the goods listed on the Bills of Lading. He further concluded that the value of the goods on the invoices was correct.

The evidence offered by Plaintiff is not admissable to establish the market value of the goods. First and foremost, Plaintiff did not authenticate the invoices from the clothing manufacturers at trial as required by F.R.E. 803(6). Nor did it attach a declaration that would allow the invoices to be self authenticated under F.R.E. 902(12). Therefore, the invoices are not admissible to prove the market value of the goods under Rule 803(6) or Rule 902(12).

Relying primarily on *Air Land Forwarders Inc. v. U.S.*, 172 F.3d 1338 (Fed.Cir.1999), Plaintiff asserts that the invoices are admissible under F.R.E. 803(6) because Wadhwani declared that they were received in the ordinary course of business and used and relied on by the recipient in day-to-day business. The Ninth Circuit has held that records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of the receiving company's business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records.

*MRT Constr. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir.1998) (citing *United States v. Childs*, 5 F.3d 1328, 1333-34, 1334 n. 3 (9th Cir.1993).

In this case, Wadhwani declared that the commercial invoices, such as the invoices prepared by the manufacturers in this case, "are routine claim documents submitted in every marine cargo claim. They are universally relied upon as documents showing the value of the item. These documents are prepared in the ordinary course of business, and submitted to and relied on by our company in order [sic] course of our business to calculate the loss."

Wadhwani's declaration fails to meet the standard in *MRT* for two reasons. First, Wadhwani's declaration states that he is employed by L & J West Coast Inc. It does not state that he was an agent of or employed by Plaintiff. Wadhwani was merely a third party hired by Plaintiff to survey the damage of the lost goods. Though L & J West Coast may receive invoices for the purpose of surveying, it was Plaintiff's insured who relied on the accuracy of the records in conducting their business and who maintained these invoices in the course of their business. FN2 A third party hired by a business cannot properly authenticate the business records of an entity or those records received by a business. See *National Relations Board v. First Termite Control Co., Inc.*, 646 F.2d 424, 429 (1981) (holding that the bookeeper of an entity, who had no knowledge as to how the entity records were made or maintained, does not qualify as a "qualified witness" under Rule 803(6)). To properly authenticate the invoices under *MRT*, Plaintiff had to establish that HSBC or HSBC's insured kept the invoices in their regular course of business and relied on them. *MRT*, 158 F.3d at 483.

> FN2. See *Childs*, 5 F.3d 1334 n. 3 (discussing *NLRB v. First Termite Control Co.*, 646 F.2d 424 (9th Cir.1981)):
> We reversed the district court's decision [in *First Termite* ] to admit the freight bill as a business record. In reading this decision, we emphasized the fact that the lumber company did not rely on the portion of the record at issue and 'had no interest in the accuracy of that portion of the [record]." *Id.* at 429. In contrast, the autodealers in this case did rely on the records at issue and had substantial interest in their accuracy.

*4 Even if Wadhwani was considered a "qualified witness", his declaration does not sufficiently meet

the requirements of Rule 803(6). Wadhwani does not declare, as is required under under Rule 803(6) and *MRT,* that Plaintiff or Plaintiff's insured "kept" the records in the ordinary course of its business. Rather, he claims, without establishing any foundation for his contention, that the clothing manufacturers prepared the documents in the ordinary course of their business and that the documents were received by him in the ordinary course of business. Thus, even under *MRT'* s more liberal requirement, Plaintiff's have not properly authenticated the invoices. Accordingly, the invoices lack authentication under F.R.E. 901 and do not satisfy the business records exception to the hearsay rule in F.R.E. 803(6).

Since Plaintiff failed to properly authenticate the subrogation receipts and the manufacturer's invoices, it has failed to offer any admissible evidence establishing the value of the goods lost. Accordingly, it has failed to meet their burden of proving damages.

### B. *Even if Plaintiff's Evidence is Admissable, its Recovery is Limited by the Limitation in Nova's Contract With Scanwell*

As indicated in this Court's prior order, Clause 6.6 the Bill of Lading between the cargo owners and Scanwell provides that with regard to inland carriage, Scanwell is subject to the inland carrier's tariffs, contracts of carriage, and otherwise compulsorily applicable law. In other words, Clause 6.6 requires us to look at Scanwell's contract with Nova in determining Scanwell's liability to the cargo owners. FN3

> FN3. Nova also enjoys the rights provided under Clause 6.6 of the contract. Clause 3.1 of the Bill of Lading states that Scanwell is entitled to subcontract any part of the carriage. Clause 3.2 further states that Scanwell's subcontractors are entitled to the same rights, exemptions from liability, defenses and immunities to which the Carrier is entitled. Thus, the Bill of Lading allows Nova (the subcontractor) to enjoy all of the defenses afforded to Scanwell under the bill of Lading.

In this case the inland carrier is Nova. Neither Nova's tariffs, nor its contract of carriage, discussed the standard of liability. Thus, we previously held that under compulsorily applicable law, a strict liability standard would be used. *See* Cal. Civ.Code § 2195.

We further held that if Scanwell's contract of carriage contained a limitation on the amount of liability, it would be applied against Plaintiff by virtue of Clause 6.6 in the Bill of Lading.

During trial, Nova's president, Hector R. Velasco, stated that Nova had an operating agreement with Scanwell dated March 25, 1992. Attached to this agreement was a rate cheet, which contained a clause limiting Nova's liability to the lesser of $1.00 per pound or $1,000.00 per shipment. Velasco also stated that this agreement governed the shipment at issue in this case. Moreover, Velasco declared that during the three years preceding the shipment at issue in this case, Nova issued approximately 660 invoices to Scanwell which reiterated the limitation of liability contained in the rate sheet. Furthermore, Nova's claims examiner, Alisann Gina Iler, stated during trial that Nova and Scanwell applied this liability limitation to claims made prior to the loss at issue in this case.

"[A] course of dealing between the parties, like a usage of trade, may determine the meaning of language or may annex an agreed but unstated term." *See* Rest.2d, Contracts § 223, Cmt b.; See 3 Corbin § 555 et seq.; 5 Williston 3d § 660. The Ninth Circuit recently approved the use of a course of dealing analysis in interpreting shipping contracts where the contract was silent with respect to liability. *See Insurance Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.,* 201 F.3d 1111, 1113 (9th Cir.2000). A course of dealing is "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *Id.* (citing Cal. Com.Code § 1205(1) (1964)). An inference of the parties' common understanding that is based upon a prior course of dealing is a question of fact. Id.

*5 In this case, it is not clear from the documents whether the rate sheet containing the limitation of liability was sent to Scanwell along with the operating agreement dated March 25, 1992. However, Defendants did offer sufficient evidence to prove that there was a course of dealing between Nova and Scanwell which incorporated the liability limitation. In *NNR* the Ninth Circuit upheld a limitation of liability based on a course of dealing between a shipper and a carrier. *Id.* at 1114. In *NNR* the carrier had issued 47 separate invoices containing a limitation of liability prior to the shipment at issue in that case. *Id.* Even though no such invoice was issued with regard to the shipment at issue in *NNR,*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1875851 (C.D.Cal.), 2002 A.M.C. 411
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

the court held that there was sufficient evidence for the court to conclude that the shipper was bound by the liability limitation based on the prior course of dealing. *Id.*

In the instant case, Defendants presented evidence that 660 invoices issued prior to the incident at issue in this case contained the limitation of liability stated on the rate sheet. Moreover, they presented evidence showing that this liability limitation was applied in other claims made by Scanwell. Based on the evidence adduced at trial, the Court holds that Scanwell was bound by the liability limitation imposed by the prior course of dealing and that this limitation was part of its contract of carriage with Nova. Accordingly, pursuant to Clause 6.6, both Scanwell and Nova's liability to the Plaintiff is limited as provided by the liability limitation.

IT IS SO ORDERED

C.D.Cal.,2001.
HSBC Ins. Ltd. v. Scanwell Container Line Ltd.
Not Reported in F.Supp.2d, 2001 WL 1875851 (C.D.Cal.), 2002 A.M.C. 411

Briefs and Other Related Documents (Back to top)

• 2:00CV05729 (Docket) (May. 26, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.