UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10736 (NMG)

| | |
|---|---|
| AMERICAN PROCESS EQUIPMENT COMPANY, INC. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| ATLANTIC MUTUAL INSURANCE COMPANY | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT JIM LEIGH**

Plaintiff American Process Equipment Company, Inc. ("plaintiff" or "APEC") hereby moves this Honorable Court to deny defendant's motion to exclude plaintiff's expert, Jim Leigh, from testifying at the trial of this matter. In support of this Opposition, plaintiff states as follows:

**I.   Facts Relevant To This Opposition**

1. The central issue in this case is whether or not APEC suffered an insurable loss in or around late March and April, 2002, and on diver dates thereafter, when its business premises located in Hingham, Massachusetts experienced significant water leaks damaging 31 of APEC's machines. Shortly after experiencing the loss, APEC contacted its insurer Atlantic Mutual Insurance Company ("Atlantic Mutual" or

"defendant"),[1] and submitted a written claim for the policy limits for property damage (minus the $1,000 deductible). Plaintiff also made a claim for damages under the business interruption section of the policy. A copy of APEC's Proof of Loss is attached hereto as Exhibit 2.

2. There is little dispute that there were significant water leaks at APEC's business premises in late March and early April 2002. *See* portion from APEC employee, Gerrard A. Carreau's deposition transcript ("Carreau Deposition"), attached hereto as Exhibit 3, in which he testified that "I know we had a big storm that week [late March or early April]. That big storm must have been for three days. I know it was a storm and it was windy and the water was all over. It came in all over the place";[2] *see also* letter from APEC to its landlord attached hereto as Exhibit 4. APEC took necessary and reasonable measures to protect its machines ("we covered the machines that were getting wet", "we tried wiping machinery down" and "we dried everything off, we wiped everything off, dried everything off"). *See* Carreau Deposition, Exhibit 3 hereto.[3] Despite APEC's best efforts to protect its machines, many of them were penetrated by water. *See* Proof of Loss, Exhibit 2 hereto.

---

[1] *See* portion from the Deposition Transcript from the deposition of Neil W. Anderson, attached hereto as Exhibit 1.

[2] Mr. Carreau is, it should be added, no friend of APEC, and defendant has identified him as a witness.

[3] While defendant has claimed that APEC failed to take reasonable steps to protect its machines from being damaged by the water leaks, it is important to understand that the Hingham facility is larger than a football field and at the time of the loss it held more than 200 pieces of heavy machinery. It is also important to realize that many machines are more than three stories tall and weigh over 12½ tons. Thus, moving, covering and cleaning the machines is no simple task.

2

3. In compliance with the insurance policy, APEC provided a detailed description of each piece of machinery that was damaged, including the scope of the damage, an estimate of the cost to repair the damaged machines and an estimate of the cost to replace machines in the event that repairs were not economically feasible. *See* Exhibit 2 hereto. Despite APEC's cooperation with Atlantic Mutual, defendant "rejected" APEC's claim on its belief that, *inter alia*, APEC misrepresented the amount it would cost to repair and/or replace the damaged machines. Even though Atlantic Mutual's agent who inspected the machines concluded that they had been damaged by water penetration and estimated the cost of repair to be approximately $580,500, Atlantic Mutual did not offer APEC even a penny in payment. A copy of a report prepared by Peterson & Associates, a company retained by Atlantic Mutual to inspect the machines, is attached hereto as Exhibit 5.

4. At the trial of this matter, plaintiff expects to call Jim Leigh ("Mr. Leigh"), founder of Pyramid Rebuild & Machine, LLC, a company that specializes in repairing, rebuilding, realigning, retrofitting, installing and re-manufacturing large machine tools similar to those used by APEC, as an expert witness on the issue of the cost to repair and/or replace APEC's damaged machines.

5. Mr. Leigh examined APEC's records, met with Mr. O'Neill and inspected nine of APEC's damaged machines that were still available for inspection (many of the damaged machines were sold at auction for a fraction of their value due to their then damaged condition). Based on his 27 years of experience working in this highly technical field, Mr. Leigh concluded that the cost of repair and/or replacement for

3

APEC's damaged machinery, excluding the overhead cranes, totals $2,074,180 for the machines available for repair and $2,720,203 for replacement costs for the damaged machines that are no longer available. Pursuant to Fed. R. Civ. P. 26(a)(2), Mr. Leigh prepared two detailed reports providing the basis and supporting documentation for his opinion relative to the repair and/or replacement costs. A copy of Mr. Leigh's reports (excluding photographs) are attached hereto as Exhibit 6.

6. Defendant has moved to exclude Mr. Leigh from testifying at the trial of this matter, asserting that there is a lack of foundation supporting Mr. Leigh's opinion. Defendant claims that because Mr. Leigh does not have first-hand knowledge of the condition of the machines at or around the time of the loss or whether the machines may have been damaged subsequent to the loss he should be precluded from testifying. Atlantic Mutual's challenge to Mr. Leigh's testimony is not grounds for excluding Mr. Leigh as an expert witness, but rather, at most, is more appropriate for cross-examination, since the weight of Mr. Leigh's testimony is a matter for the jury to decide.

## II.  Legal Argument

### A.  Standard for the Admissibility of Opinion Testimony By Experts.

The use of expert testimony is allowable when the expert's testimony will assist the jury regarding a subject matter that is not within the scope of ordinary experience. *See* Fed.R.Evid. 702: "If scientific, technical, or other specialized knowledge will assist the

4

trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Additionally, expert testimony must be considered in context with Rule 402, which states; "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." *See* Fed.R.Evid. 402. Clearly, what Mr. Leigh will testify to – the cost of repair and/or replacement of APEC's damaged machines – is not a matter within the scope of a jury's ordinary experience, necessitating testimony from an expert witness such as Mr. Leigh.

In the threshold case on the admissibility of expert testimony, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Supreme Court outlined four steps to be considered when determining the admissibility of expert testimony: (1) whether a theory has been or can be tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance within the relevant scientific community. The Supreme Court in *Daubert* was also quite specific in stating that reliance on the four factors should be flexible. *Id.* at 594; *see also Coleman v. De Minico*, 730 F.2d 42, 46 (1st Cir. 1984) (holding that "just as a court may not permit an expert to testify on the basis of pure conjecture, neither may the court

5

exclude any and all expert testimony not premised entirely on facts already proven by evidence before the jury"). Experts are also "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation…[which] is premised on an assumption that the expert's opinion will have a reliable bases in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharmaceuticals, supra*, 509 U.S. at 592.

In evaluating the admissibility of expert testimony, *Daubert* recognized that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

    **B.**    **The Court Should Allow Mr. Leigh's Expert Testimony As To His Examination of the Nine Machines He Inspected In 2005 Because His Estimates As To The Damaged Machines Is Relevant And Based on Reliable Methods.**

As defendant acknowledges, Mr. Leigh personally inspected the nine damaged machines that are still available for inspection on three separate occasions. *See* Defendant's Memorandum at 5. Defendant, however, still moves to preclude the testimony, arguing that Mr. Leigh has no personal knowledge of the condition of the machines prior to the loss. But experts typically lack first-hand knowledge of the state of the relevant matters before the accident or event in question, and must necessarily supplement their "after-the-

fact" examinations with evidence from third parties concerning what existed earlier.[4] As long as the third party evidence is competent, and the expert examination appropriate, the opinion is admissible. See Fed.R.Evid. 703, and additional discussion *infra*. As an expert in the field of machine repair and refabrication, Mr. Leigh's testimony is clearly necessary to educate the jury on the scope of the damage suffered by each of these complex machines and the cost of repairs. As this is one of the central issues in dispute, Mr. Leigh's testimony satisfies "the ultimate purpose of the *Daubert* inquiry [which] is to determine whether the testimony of the expert would be helpful to the [trier of fact] in resolving a fact in issue." See *McConaghy v. Sequa Corp.*, 294 F.Supp.2d 151, 169 (D.R.I. 2003).

Atlantic Mutual's primary challenge to Mr. Leigh's opinion is not that he lacks expertise or that the methodology he used in inspecting the machines to formulate his opinion was insufficient; but, rather, that his opinion lacks a foundation on the grounds that he does not possess first-hand knowledge concerning the condition of the machines prior to the loss and that he did not inspect the machines immediately after the loss. See Defendant's Memorandum at 5, 8-9. These challenges, however, are not sufficient grounds to exclude Mr. Leigh from testifying, since Atlantic Mutual will have the opportunity to cross-examine Mr. Leigh at trial, which the courts have recognized as the preferred mechanism to challenge disputed expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, supra*, 509 U.S. at 596; *Seahorse Marine Supplies, Inc. v. Puerto Rico*

---

[4] Defendant's position would require, in effect, that all experts also be fact witnesses – that is, actual witnesses to the events in question.

*Sun Oil Company*, 295 F.3d 68, 82 (Puerto Rico 2002) (holding that a damages expert was permitted to testify concerning his challenged profit loss valuation as opposing counsel would have opportunity to vigorously cross-examine); *Forbis v. City of Portland*, 2003 WL 21250675 (D.Me. 2003) (holding that cross-examination is generally sufficient to address challenge to expert witness' methodology).

### C. The Court Should Allow Mr. Leigh's Opinion Concerning The Fifteen Machines That He Did Not Personally Inspect As His Estimates Are Relevant And Based On A Reliable Methodology.

Defendant challenges Mr. Leigh's opinion concerning the fifteen machines he did not inspect on the grounds that he did not have first-hand knowledge concerning the condition of the machines prior to the loss and that he relied on information provided to him by third parties, *i.e.* vendors, to formulate his opinion concerning the replacement costs for these damaged machines. *See* Defendant's Memorandum at 9-12. Under Fed.R.Evid. 703, Mr. Leigh is permitted to base his opinion on information provided to him by third parties, *see Daubert v. Merrell Dow Pharmaceuticals*, *supra*, 509 U.S. at 595; Fed.R.Evid 703, and Mr. Leigh's use of estimates provided to him by vendors was not an unusual method by which to determine the value of machines similar to the ones in dispute. In fact, obtaining quotes from machine vendors is perhaps the most accurate method of determining the value of APEC's damaged machines, since these quotes show the precise amount of how much it will cost APEC to replace these machines. Due to the complexity of these machines, Mr. Leigh's expertise is necessary to determine what replacement machines are suitable to perform the same function that APEC's machines performed prior

8

to being damaged during the loss.

An expert witness is not disqualified from testifying merely because he lacks first-hand knowledge on some of the facts underlying his expert opinion. *See Microfinancial, Inc. v. Premier Holidays International*, 385 F.3d 72, 81. Mr. Leigh is qualified to testify, since he is an expert regarding the machines; his lack of first-hand knowledge as to how and when the machines were damaged does not disqualify him from testifying at trial. *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 31 (D. Mass. 2000) (holding that an expert witness was not precluded from testifying as a result of lack of first-hand knowledge as his knowledge and expertise in the subject matter qualified him as an expert); *Microfinancial, Inc. v. Premier Holidays International, supra*, at 81 (holding that an expert need not be "familiar with every component of a transaction or device as a prerequisite to offering expert testimony."). A court has broad discretion to determine the admissibility of expert witness testimony, and the party challenging the expert opinion on the grounds that the "factual underpinning of an expert's opinion is weak, is a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury." *Id.* at 81; *see also International Adhesive Coating, Co., Inc. v. Bolton*, 851 F.2d 542, 545 (D. N.H. 1988).

In addition, as an expert, Mr. Leigh is permitted to answer questions concerning these machines in the form of a hypothetical question. Plaintiff anticipates that there will be sufficient factual evidence adduced at trial showing that the machines were damaged as a result of the loss, and Mr. Leigh may properly answer questions concerning the cost of repair and/or replacement of these machines based on his assumption that machines were

9

operational at the time of the loss and were damaged by the late March and April, 2002 water leaks. Clearly, it is well established trial practice for experts to answer hypothetical questions, and the "burden of exploration of the facts and assumptions underlying the testimony of an expert witness" may be challenged by opposing counsel during cross-examination. *See Coleman v. De Minico*, 730 F.2d 42, 46 (1st Cir. 1984) (holding that an expert may answer hypothetical questions as the jury was capable of determining whether the hypothetical was supported by the evidence); *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 10 (Puerto Rico 1993) (expert witness was permitted to answer hypothetical questions based on underlying factual assumptions).

Here, defendant will similarly have an opportunity to question Mr. Leigh regarding his opinion, and the weight and credibility of Mr. Leigh's opinion is a matter for the jury.

WHEREFORE, based on the forgoing, defendant's motion to exclude plaintiff's expert Jim Leigh from testifying at trial should be denied and plaintiff respectfully request that this Court allow the testimony of its expert.

Respectfully submitted,

American Process Equipment
Company, Inc.,

By its attorneys,

*[signature]*

David L. Kelston, BBO #267310
Noah Rosmarin, BBO #630632
Adkins, Kelston & Zavez, P.C.
90 Canal Street, Fifth Floor
Boston, MA 02214
(617) 367-1040

Dated: November 25, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party, by mail (by hand) on this date 11/25/05

*[signature]*