UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10736 (NMG)

| | |
|---|---|
| AMERICAN PROCESS EQUIPMENT COMPANY, INC. | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| ATLANTIC MUTUAL INSURANCE COMPANY | )<br>)<br>) |
| Defendant. | )<br>) |

## PLAINTIFF'S REQUESTS FOR JURY INSTRUCTIONS

Plaintiff hereby requests that the Court instruct the jury as set forth in the attached proposed instructions.

The proposed instructions concern the elements of the claims for breach of contract (Count II of plaintiff's complaint) and defendant's claim of fraud and misrepresentation (Count III of defendant's counterclaim).

Plaintiff requests leave to submit such supplements and/or modifications to these proposed instructions as are appropriate.

Respectfully submitted,

American Process Equipment
Company, Inc.,

By its attorneys,

_____
David L. Kelston, BBO #267310
Noah Rosmarin, BBO #630632
Adkins, Kelston & Zavez, P.C.
90 Canal Street, Fifth Floor
Boston, MA 02214
(617) 367-1040

Dated: December 5, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on this date 12/5/05

_____

## Instruction No. 2: Defense to Breach of Contract Claim

A refusal or failure to perform may not be a breach of contract where there is a legal reason not to perform. Legal reasons are called "defenses." The defendant has the burden of proving to you that it has a legal reason or defense for its nonperformance. *See Beaudoin v. Lenza*, 338 Mass. 798, 156 N.E.2d 682 (1959); *Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co.*, 327 Mass. 535, 537, 100 N.E. 28, 30 (1951); *Eliot Descourt Corp. v. Dame*, 19 Mass.App.Ct. 280, 285, 473 N.E.2d 711, 715, *further app. rev. denied*, 394 Mass. 1103, 477 N.E.2d 595 (1985).

## Instruction No. 3: Implied Covenant of Good Faith and Fair Dealing

In Massachusetts, there is an implied covenant of good faith and fair dealing between the parties to a contract.

The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-74, 583 N.E.2d 806, 819-21 (1991) (citing *Drucher v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385, 348 N.E.2d 763, 765 (1976)); *Warner Ins. Co. v. Comm'r of Ins.*, 406 Mass. 354, 362 n.9, 548 N.E.2d 188, 193 n.9 (1990); *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 105, 346 N.E.2d 1251, 1257-58 (1977); *Kerrigan v. Boston*, 361 Mass. 24, 33, 278 N.E.2d 387, 393-4 (1972); 37 J. Nolan, *Massachusetts Practice, Tort Law*, § 11 at 10 (1979). *See also* Chapter 16, Consumer Protection Act – Chapter 93A.

Good faith has generally been defined as honesty in fact in the conduct or transaction concerned. *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 289 n. 7 (1980).

Bad faith is a broad term and is not limited to intentional wrongdoing. *See* Restatement (Second) of Contracts, §205, comment b.

Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. *Id*.

Bad faith may arise even in the absence of proof of intentional wrongdoing. *MacGillivary v. W. Dana Bartlett, Ins. Agency*, 14 Mass. App. Ct. 52, 57 (1982); *Center Garment Co., Inc. v. United Refrigerator Co.*, 369 Mass. 633, 637-38 (1976).

A breach of the covenant of good faith and fair dealing may be shown through conduct which is highly unreasonable or in deliberate disregard of the threatened harm. *DeVries v. St. Paul Fire and Marine Ins. Co.*, 716 F. 2d 939, 942-43 (1st Cir. 1983);

## **Instruction No. 4: Insurer's Duty to Investigate**

In the context of insurance policies like the insurance policy in this case, the implied covenant of good faith and fair dealing requires Atlantic Mutual to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage.

If you find that Atlantic Mutual failed to conduct any necessary investigation in a timely fashion or failed to conduct a reasonable investigation before it denied coverage to APEC, then the defendant has breached its insurance policy contract with APEC. *See* Allan D.Windt. *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds*, Fourth Ed. §2:5, 66 (2001) (citing *Coventry Associates v. American States Ins Co*, 136 Wash. 2d 269 (1998)). A copy of these authorities are affixed hereto.

### Instruction No. 5:

Atlantic Mutual claims that the insurance policy contract is void because of a fraudulent or material misrepresentation by plaintiff. Misrepresentation is an assertion that is not true. In order to find that a misrepresentation was made, you must find that Atlantic Mutual has proven by a preponderance of the evidence the following elements:

1. Elements

To prove fraud with intent, defendant must prove that:

(a) plaintiff made a false statement;

(b) of a material fact;

(c) knowing that the statement was false;

(d) for the purpose of inducing Atlantic Mutual to act on it;

(e) and that Atlantic Mutual reasonably relied on the statement as true; and

(f) and acted on the statement to its damage.

See *Hyde v. National Tire Wholesale, Inc.*, 1995 WL 808750, *2 (1995); *Schmid v. Nat. Bank of Greece, S.A.*, 622 F.Supp. 704, 711 (D.Mass.1985); *Danca v. Taunton Savings Bank*, 385 Mass. 1, 8 (1982); *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir. 1984); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975); *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152 (1963).

2. Misrepresentation

The defendant claims that the plaintiff acted fraudulently by making a false statement to Atlantic Mutual by submitting a fraudulent insurance claim concerning damage to its machines, and the cost to repair or replace these machines. Atlantic Mutual must prove, as to each machine that it claims misrepresentation, that at the time the statement was made by APEC that it knew that these statements were false.

3. Materiality

Atlantic Mutual must prove that the alleged false statement made by APEC is a "material" false statement. A material false statement is one which would appear to a

reasonable person to be one which would make a difference. In this case, Atlantic Mutual must prove that APEC made false statements, which APEC knew to be one on which the legal obligation of Atlantic Mutual to make payments would turn. That is, there must be proof that the insurance claim in question was reasonably capable of misleading Atlantic Mutual to make payments which it would not have otherwise made, and which it would not have been required to make under the law.

4.   Purpose/Intent

In order to establish that APEC had the requisite purpose or intent, Atlantic Mutual must show that APEC intended that Atlantic Mutual rely on the particular false statements made. It is not sufficient to show that the APEC was negligent in making the representations.

5.   Reasonable reliance

Atlantic Mutual must prove that it relied in the false statement and that its reliance was reasonable and justified under the circumstances. *Saxon Theater Corp. v. Sage*, 347 Mass. 662, 666-67 (1964); *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987).

6.   Damages

The burden is on Atlantic Mutual to prove all of its damages, if any. *National Shawmut Bank v. Johnson*, 317 Mass. 485, 491 (1945); *Brackett v. Perry*, 201 Mass. 502 (1909). In the absence of damages there can be no finding of fraud. *Mass. Cash Register, Inc. v. Comtrex Systems Corp.*, 901 F.Supp. 404, 424 (D.Mass. 1995) (proof of damages are a required element of a finding of liability for fraud.)

### Instruction No. 6:
### Mistakes in Calculations – Not Fraudulent or Material Misrepresentations

    If you conclude that APEC made mistakes in calculations, exaggerations or doubtful assertions, but that these were made by APEC in a good faith judgment of the damage to its machines and the cost to repair and/or replace these machines, then these mistakes, exaggerations or doubtful assertions are not sufficient to warrant a finding that APEC made a fraudulent or material misrepresentation. *See DRCDT, Inc. v. Integrity Ins. Co.*, 816 F2d 273, 277 (6th Cir 1987); *J&H Auto Trim Co. v. Bellefonte Ins. Co.*, 677 F2d 1365, 1372-3 (11th Cir 1982); *Yates v. State Farm Fire & Cas. Co.* 417 F2d 766, 767 (5th Cir 1969); *Badger Mut. Ins. Co. v. Morgan*, 313 F2d 783, 785 (5th Cir 1963); *Zaitchick v. American Motorists Ins. Co.*, 554 F Supp 209, 212 (SDNY 1982); *J&H Auto Trim Co. v. Bellafonte Ins. Co.*, 501 F Supp 942, 962 (MD Fla 1980); *Nagel-Taylor Automotive Supplies, Inc. v. Aetna Cas. & Sur. Co.* 81 Ill App 3d 607, 402 NE2d 302, 306 (1980); *Shields v. Nationwide Mut. Fire Ins. Co.*, 301 SE2d 439, 442-3 (NC Ct App 1983); *Nabors v. South Carolina Farm Bureau Mut. Ins. Co.*, 273 SC 126, 255 SE2d 337, 338 (1979); *Mina v. General Star Indem. Co.*, 218 Mich. App. 678, 555 N.W.2d 1, 5 (1996).

§ 2:4                                    INSURANCE CLAIMS AND DISPUTES

held that the insurer's defense would be unavailing if in fact it was found to have unreasonably delayed in taking action. It reasoned that, under the circumstances, an unreasonable delay would have amounted to a denial of coverage.[8]

### § 2:5  Insurer's duty to investigate—in general

In the context of first-party policies,[1] an insured files a claim and then must await the insurer's investigation of the facts upon which the claim is based. The implied covenant of good faith and fair dealing in the policy should necessarily require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage. In the event the insurer fails in either regard, it will have breached the covenant and, therefore, the policy.[2] The effect of such a breach is discussed in §§ 2:4, 3:11, 5:15, 5:16, 6:40, and 9:26.

For the reasons discussed in § 2:3, the breach should not result in the insurer being estopped from denying coverage. There is, however, authority to the contrary.[3]

With regard to the duty to investigate under a liability policy (i.e., with regard to a third party claim), see §§ 2:1, 4:6, 5:26, and 6:40. An insurer's duty to investigate first party claims must be distinguished from its duty to investigate third party claims. A first party claim involves a request by the insured that the insurer pay the insured money because of the existence of certain facts (e.g. fire damage to the insured's property, a physical disability that prevents the inured from working). The insurer should investigate those facts, within a reasonable amount of time, because only such investigation will allow the insurer to determine whether coverage benefits are owed.

---

[8]339 NYS2d at 101. See, e.g., Otteman v Interstate Fire & Cas Co, 172 Neb 574, 111 NW2d 97, 101–02 (1961); Fireman's Fund Ins Co v Sec Ins Co, 72 NJ 63, 367 A2d 864, 869 (1976).

Note, however, that, absent a duty to defend, a delay in responding to an insured's notice of claim should rarely be deemed to be unreasonable unless the insurer was notified of the need for immediate action.

[Section 2:5]
[1]First-party policies are discussed in § 6:5.

[2]E.g. Coventry Associates v. American States Ins. Co., 136 Wash. 2d 269, 961 P.2d 933, 937 (1998) (citing this book).

[3]See, e.g., Kanne v Connecticut Gen Life Ins Co, 607 F Supp 899, 906 (CD Cal 1985).

66

Westlaw.

961 P.2d 933                                                                Page 1
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

▷

**Briefs and Other Related Documents**

Supreme Court of Washington,
En Banc.
COVENTRY ASSOCIATES, Petitioner,
v.
AMERICAN STATES INSURANCE COMPANY,
Respondent.
No. 65850-1.

Argued June 17, 1998.
Decided Sept. 3, 1998.

Insured brought action against property insurer to recover for breach of contract by denying coverage, bad faith, and violation of Consumer Protection Act (CPA). The Superior Court, King County, Laura Inveen, J., granted partial summary judgment for insurer on contract claim and dismissed remaining claims as not viable in absence of coverage. Insured appealed. The Court of Appeals, Agid, J., 86 Wash.App. 845, 939 P.2d 1245, affirmed. Review was granted. The Supreme Court, Johnson, J., held that: (1) as a matter of first impression, insured may maintain an action for bad faith investigation of the claim and violation of the Consumer Protection Act (CPA) even in the absence of coverage (overruling Farrington); (2) first-party insurer's bad faith in handling claim does not create rebuttable presumption of harm; and (3) insured was entitled to the expenses it incurred as a result of the investigation and to general tort damages, rather than coverage by estoppel or a return of a portion of its premium.

Reversed and remanded.

Durham, C.J., concurred and filed opinion.

West Headnotes

**[1] Consumer Protection** ⚖═6
92Hk6 Most Cited Cases

**[1] Insurance** ⚖═3335
217k3335 Most Cited Cases
Harm from the insurer's bad faith acts is an element of every action for bad faith handling of claim or violation of the Consumer Protection Act (CPA). West's RCWA 19.86.010 et seq., 48.01.030, 48.30.010(1).

**[2] Consumer Protection** ⚖═6
92Hk6 Most Cited Cases

**[2] Insurance** ⚖═3353
217k3353 Most Cited Cases

**[2] Insurance** ⚖═3361
217k3361 Most Cited Cases
An insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the Consumer Protection Act (CPA) regardless of whether the insurer was ultimately correct in determining coverage did not exist; overruling Farrington Corp. v. Commonwealth Land Title Ins. Co., 86 Wash.App. 399, 936 P.2d 1157 (1997). West's RCWA 19.86.010 et seq., 48.01.030, 48.30.010(1).

**[3] Insurance** ⚖═3381(2)
217k3381(2) Most Cited Cases
In the context of a third party reservation of rights case, once an insured meets the burden of establishing a liability insurer's bad faith in handling claim, a rebuttable presumption of harm arises.

**[4] Insurance** ⚖═3337
217k3337 Most Cited Cases
Bad faith handling of claim is actionable, even when the insured's policy does not provide coverage for the loss.

**[5] Insurance** ⚖═1867
217k1867 Most Cited Cases
Insurers have a general duty of good faith in their actions with their insureds.

**[6] Insurance** ⚖═3335
217k3335 Most Cited Cases
As long as the insurance company acts with honesty in handling claim, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or Consumer Protection Act (CPA) claim against its insurer on the basis of a good faith mistake. West's RCWA

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

Page 2

19.86.010 et seq., 48.01.030, 48.30.010(1).

**[7] Insurance ⚖═3353**
217k3353 Most Cited Cases

**[7] Insurance ⚖═3361**
217k3361 Most Cited Cases
The implied covenant of good faith and fair dealing in the policy should necessarily require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage; in the event the insurer fails in either regard, it will have breached the covenant and, therefore, the policy.

**[8] Insurance ⚖═3381(2)**
217k3381(2) Most Cited Cases
First-party insurer's bad faith in handling claim does not create rebuttable presumption of harm; no potential conflict of interest exists between insurer and insured.

**[9] Insurance ⚖═3419**
217k3419 Most Cited Cases
Conduct by the insurer which erodes the security purchased by the insured breaches the insurer's duty to act in good faith.

**[10] Insurance ⚖═3108**
217k3108 Most Cited Cases

**[10] Insurance ⚖═3374**
217k3374 Most Cited Cases
Property insurer's bad faith investigation entitled insured to the expenses it incurred as a result of the investigation and to general tort damages, rather than coverage by estoppel or a return of a portion of its premium.

**[11] Insurance ⚖═3419**
217k3419 Most Cited Cases
Because actionable bad faith by insurer is a tort, an insured should not be limited to the economic damages within the contemplation of the parties at the time the contract was made.

**[12] Insurance ⚖═3106**
217k3106 Most Cited Cases
Coverage by estoppel is not the appropriate remedy for a first-party insurer's bad faith in handling claim.

**934 *273 Law Offices of Mark Alan Johnson, Inc., Mark A. Johnson, Scott A. Samuelson, Seattle, for Petitioner.

Bullivant, Houser, Bailey, Pendergrass & Hoffman, Robert F. Riede, Jerret E. Sale, Deborah L. Carstens, Seattle, for Respondent.

Reed, McClure, William R. Hickman, Pamela A. Okano, Seattle, Amicus Curiae on Behalf of Mutual of Enumclaw Insurance United Services Auto Association & State Farm Fire & Casualty Company.

Lane, Powell, Spears & Lubersky, David M. Schoeggl, Linda B. Clapham, Tammy L. Lewis, Seattle, Amicus Curiae on Behalf of London Market Insurers.

JOHNSON, Justice.

The main issue presented in this appeal is whether an insured may bring a bad faith or Consumer Protection Act (CPA) claim against its insurer when the insurer conducted a bad faith investigation of the insured's claim but the denial of coverage was ultimately determined to be correct. American States Insurance Company (American States) denied Coventry Associates' (Coventry) claim after a mud slide damaged an apartment complex Coventry was constructing in Renton, Washington. Coventry filed suit against American States, alleging breach of contract, bad faith, and CPA violations. The trial court granted American States' motion for partial summary judgment on the coverage issue and dismissed Coventry's remaining *274 claims. Coventry appealed to the Court of Appeals, which affirmed. Coventry Assocs. v. American States Ins. Co., 86 Wash.App. 845, 939 P.2d 1245 (1997). We granted Coventry's petition for review and reverse and remand the case for trial.

FACTS

In 1990, Coventry was constructing an apartment complex in Renton, Washington; the construction project was located on the side of a hill. Coventry built a retaining wall to stabilize the hillside during construction but unusually heavy rainfall in the area caused mud to slide into the retaining wall. The retaining wall collapsed and mud and water flowed into the main construction site, damaging the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

961 P.2d 933                                                                                                                    Page 3
136 Wash.2d 269, 961 P.2d 933
**(Cite as: 136 Wash.2d 269, 961 P.2d 933)**

property. Coventry ceased work on the project.

Coventry submitted a claim to American States, its insurer on the construction project. An American States adjuster briefly investigated the project site, determined the damage was to the retaining wall, and denied the claim because Coventry's policy had an exclusion for damage to that structure. The adjuster did not investigate the cause of the damage or any loss of business coverage because he did not believe that Coventry had a claim for business loss. The adjuster did not investigate damage to the construction project other than that to the retaining wall. The adjuster admitted he looked only at two of the six forms comprising Coventry's policy before he denied coverage. The adjuster later testified he never considered whether Coventry had a business loss claim even though it had some business loss coverage.

Coventry filed suit against American States alleging breach of the insurance contract, **\*935** bad faith, and CPA violations. The parties agreed the damage was not solely to the retaining wall, the project was seriously damaged by the mud slide, and weather was the proximate cause of the damage. American States argued the loss was not covered because Coventry's policy contained a contingent "weather *275 conditions" exclusion precluding coverage from damage resulting from a landslide caused by rainfall.

The trial court granted American States' motion for summary judgment on the breach of contract claim. It also granted American States' motion to dismiss the remaining bad faith and CPA claims, concluding those claims could not exist in the absence of coverage. The Court of Appeals affirmed and, as noted above, we granted Coventry's petition for review, which raised the following issues:

(1) Does Washington provide a bad faith or CPA cause of action to first party insureds?

(2) If an insurer acts in bad faith, is there a presumption of harm?

(3) What are the remedies available to an insured if its insurer has acted in bad faith?

ANALYSIS

American States asserts that "Coventry concedes that the loss is not subject to coverage under the American States policy." Resp't Answer to Pet. for Review at 5. Coventry does not dispute this assertion nor does it raise the issue of coverage in its briefing to this court. For purposes of review, American States concedes it "acted in bad faith" in investigating Coventry's claim. However, American States contends its bad faith is not actionable, as a matter of law, because "the policy issued to Coventry did not provide coverage for the loss." Resp't Answer to Pet. for Review at 10. Essentially, American States argues because its denial of Coventry's claim ultimately proved to be correct, Coventry was not harmed as a result of American States' bad faith investigation of Coventry's claim.

Coventry argues an insured suffers harm from a bad faith investigation of its claim regardless of whether the denial of coverage eventually turns out to be appropriate. Coventry asserts it suffered harm because a portion of its premium went for the security of fair claims' administration that American States did not provide. Coventry further *276 argues insureds are generally harmed when there is no deterrent to insurers who handle a claim in a bad faith manner but ultimately prevail on the coverage issue.

Insurance companies must conduct their relations with their insureds in good faith. RCW 48.01.030 states, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." [FN1] Washington Administrative Code (WAC) 284-30 covers unfair claims settlement and trade practices by insurance companies. The purpose of WAC 284-30 is, in part, to "define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." WAC 284-30-300. As the Court of Appeals noted, the unfair practices listed in WAC 284-30 include misrepresenting pertinent facts and refusing to pay without a reasonable investigation ( WAC 284-30-330), failure to disclose all relevant policy provisions (WAC 284-30-350), and failure to state the specific grounds for denial of a claim (WAC 284-30-380). *Coventry Assocs., 86 Wash.App. at 848-49, 939 P.2d 1245.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

Page 4

FN1. RCW 48.30.010 also provides that insurers are required to act in good faith toward their insureds and must not engage in unfair trade practices. RCW 48.30.010(1) states, "[n]o person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section."

[1] As noted above, American States concedes, for purposes of this appeal, that it acted in bad faith in investigating Coventry's claim. As an element of every bad faith or CPA action, however, an insured must establish it was harmed by the insurer's bad faith acts. *Safeco Ins. Co. of Am. v. Butler,* 118 Wash.2d 383, 389, 823 P.2d 499 (1992) ("a **936 showing of harm is an essential element of an action for bad faith handling of an insurance claim"); *Industrial Indem. Co. v. Kallevig,* 114 Wash.2d 907, 920, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (in CPA actions, plaintiff must show, among other factors, an unfair or deceptive act or practice *277 which "causes injury to the party in his business or property").

The Court of Appeals agreed with American States and determined Coventry was unable to establish harm, even though the denial of Coventry's claim may have been "procedurally deficient." *Coventry Assocs.,* 86 Wash.App. at 851, 939 P.2d 1245. According to the Court of Appeals, "mere procedural errors in handling a specific claim do not support an action for bad faith because the errors do not harm the insured...." *Coventry Assocs.,* 86 Wash.App. at 850, 939 P.2d 1245. American States agrees and asserts that in the absence of coverage, a first party insured may not have a cause of action for bad faith.

*Issue # 1--Does a First Party Insured Have a Cause of Action for Bad Faith Investigation in Washington?*

[2][3] This issue is one of first impression in the context of a first party action. In the context of a third party reservation of rights case, once an insured meets the burden of establishing an insurer's bad faith, a rebuttable presumption of harm arises. *Safeco Ins. v. Butler,* 118 Wash.2d at 390, 823 P.2d 499. *See also Kirk v. Mount Airy Ins. Co.,* 134 Wash.2d 558, 564, 951 P.2d 1124 (1998) ("Once the insurer breaches an important benefit of the insurance contract, harm is assumed, the insurer is estopped from denying coverage, and the insurer is liable for the judgment.").

In this case, the Court of Appeals did not discuss *Kirk* and held that *Safeco Ins.* does not "authorize bad faith or Consumer Protection Act claims in the absence of coverage." *Coventry Assocs.,* 86 Wash.App. at 850, 939 P.2d 1245. In distinguishing *Safeco Ins.,* the Court of Appeals concluded that "harm is rebuttably presumed in that narrow circumstance where the insurer's promise to defend would entitle the insured to coverage under promissory estoppel if the insured proves bad faith." *Coventry Assocs.,* 86 Wash.App. at 850, 939 P.2d 1245. American States agrees and argues that *Safeco Ins.* and *Kirk* have no application to first party claims because "[t]he rationale *278 for imposing the presumption of harm in the context of third-party coverage does not arise in a first-party context." Resp't Supplemental Br. at 7.

Coventry argues our decisions in *Safeco Ins.* and *Kirk* control this case. Coventry asserts that the same policy underpinnings of *Safeco Ins.* and *Kirk,* upon which this court based its rebuttable presumption of harm analysis, apply here. Coventry also argues an insurer's duties to an insured are not limited to the payment of a covered claim. Coventry states: "Insurance consumers *pay for and are entitled to* the security that their insurers will investigate fairly and honestly. Failure to recognize a cause of action in the instant circumstances will encourage insurers to litigate, not investigate, significant property damage claims." Pet. for Review at 11-12.

Coventry relies on *Deese v. State Farm Mut. Auto. Ins. Co.,* 172 Ariz. 504, 838 P.2d 1265 (1992). In that case, the plaintiff's insurer denied partial payment to the plaintiff insured for medical treatment the insurer deemed unnecessary. The insured brought suit for breach of contract and bad faith. The jury found for the insurer on the contract claim but awarded the insured compensatory damages on her bad faith claim. The Arizona Supreme Court affirmed, stating, "a plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith

Westlaw.

961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

Page 5

claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing." *Deese, 172 Ariz. at 509, 838 P.2d 1265.* In so holding, the Arizona Supreme Court relied on its previous decision in *Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565 (1986),* where that court faced a similar issue and declined to adopt the insurer's reasoning that actionable bad faith is limited only to the unfounded refusal or delay in payment of a *valid* claim. Instead, the *Rawlings* court stated:

> **937 Failure to perform the express covenant to pay the claim is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing.
> *279 ....
> The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.

*Rawlings, 151 Ariz. at 157, 726 P.2d 565* (citing *Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 189, 624 P.2d 866 (1981)).* See also *White v. Unigard Mut. Ins. Co., 112 Idaho 94, 730 P.2d 1014 (1986)* (holding an insured may sue for bad faith, even if the claim is not covered, when the insurer intentionally and unreasonably delays payment on a claim and the delay harms the insured).

[4] The Court of Appeals here distinguished *Deese* and *White* on the ground that, absent a covered loss, the failure to investigate must amount to a substantial impact on the insured in order to provide the basis of a bad faith or CPA claim. *Coventry Assocs., 86 Wash.App. at 849-50, 939 P.2d 1245.* American States would have us adopt the same "no harm, no foul" rule, in which bad faith is not actionable, as a matter of law, when the insured's policy does not provide coverage for the loss. We decline to do so.

We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist. An insurer's duty of good faith is separate from its duty to indemnify if coverage exists. This result creates no insurmountable burden on the insurer. The insurer is only required to fulfill its contractual and statutory obligation to fully and fairly investigate the claim. The problem arises when the insurer fails to investigate, in bad faith, thereby placing the insured in the difficult position of having to perform its insurer's statutory and contractual obligations.

[5] Although American States' all or nothing approach is appealing, it does not recognize the jurisprudence this court has established regarding the tortious nature of a bad faith claim nor does it recognize that insurers have a general *280 duty of good faith in their actions with their insureds. *Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986)* ("The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation .... the fiduciary relationship existing between the insurer and insured.... *This fiduciary relationship ... implies more than 'honesty and lawfulness of purpose'.... It implies 'a broad obligation of fair dealing' and a responsibility to give 'equal consideration' to the insured's* interests.") (emphasis added) (quoting *Tyler v. Grange Ins. Ass'n, 3 Wash.App. 167, 173, 177, 473 P.2d 193 (1970)).* [FN2] See also *Fireman's Fund Ins. Cos. v. Alaskan Pride Partnership, 106 F.3d 1465, 1470 (9th Cir.1997)* (insurer's reliance on First Circuit Court of Appeals case holding that failure to conduct a reasonable investigation could not alone support a finding of bad faith is "misplaced" because "[t]hat is not true of Washington law").

> FN2. In *Deese* and *Rawlings,* the Arizona Supreme Court cited the emphasized portion of this quotation from *Tank* with approval. *Deese, 172 Ariz. at 507-08, 838 P.2d 1265; Rawlings, 151 Ariz. at 156-57, 726 P.2d 565.*

Under American States' proposed rule, insurers would have a duty of good faith toward their insureds only when coverage was required. That reasoning begs the question and runs counter to our previous holdings. [FN3]

> FN3. In 1997, the Court of Appeals decided *Farrington Corp. v. Commonwealth Land Title Ins. Co., 86 Wash.App. 399, 936 P.2d 1157 (1997).* The Court held that although material issues of fact existed as to whether Commonwealth conducted a reasonable investigation, Farrington could not bring a bad faith claim because the policy provided no coverage. *Farrington, 86 Wash.App. at 405,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.
961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

Page 6

936 P.2d 1157. *Farrington* is inconsistent with our holding in this case and, to the extent it stands for a proposition counter to our holding, it is overruled.

[6] This is not to say an insurer is required to pay claims which are not covered by the contract or take other actions inconsistent with the contract. Of course, insurance companies, like every other organization, are going to make some mistakes. As **938 long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a *good* faith mistake.

[7] *281 Here, the Court of Appeals procedural/substantive distinction is not based on the insurance contract or the insured's statutory obligations. In fact, under the insured's statutory obligations, the question becomes a precise one: either the insurer complies with those duties or it does not. When the insurer does not comply with those obligations in bad faith, a cause of action exists. We agree with one commentator who states:

> The implied covenant of good faith and fair dealing in the policy should necessarily require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage. In the event the insurer fails in either regard, it will have breached the covenant and, therefore, the policy.

1 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies and Insureds* § 2.05, at 38 (3d ed.1995).

### Issue # 2--Is There a Presumption of Harm?

[8] As noted above, to maintain a cause of action based on an insurer's bad faith or CPA violation the insured must establish it was harmed. While we hold the cause of action is available to first party insureds, we decline to hold in the first party context a rebuttable presumption of harm exists once an insured acts in bad faith. While a rebuttable presumption of harm exists as a result of an insurer's bad faith act in the third party context, that is so because insurers have a heightened duty of good faith in such situations. *See Tank,* 105 Wash.2d at 387, 715 P.2d 1133 ("the potential conflicts of interest between insurer and insured inherent in this type of defense [reservation of rights] mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith"). Because the potential conflict of interest does not exist in the first party context, we do not think a rebuttable presumption of harm is warranted.

This is not to say that a first party insured suffers no *282 harm when its insurer conducts a bad faith investigation of the claim. When an insurer fails to adequately investigate an insured's claim, the insured must either perform its own investigation to determine if coverage should have been provided or take no action at all. In either situation, the insured does not receive the full benefit due under its insurance contract.

American States, however, argues that just because an insured pays a premium, it is not entitled to specific investigatory services. "Coventry did not pay a premium for investigation; it paid a premium for insurance. The premium is consideration for the *contract,* not for insurance services, whether claims handling, underwriting, or commissions to agents. No part of the premium is dedicated to any particular cost of insurance or of conducting insurance business." Resp't Answer to Pet. for Review at 15. [FN4] American States also asserts that wrongfully denying an insured's claim and the attendant consequences of doing so are sufficient incentives to keep insurers from acting in bad faith.

> FN4. Amicus Mutual of Enumclaw Insurance Company et al. (Insurance Companies) raise this same argument, stating: "Premiums pay for the right to receive policy benefits for claims within the policy coverage. They do not pay for a right to have the insurer investigate *independent* of coverage." Br. of Amicus Curiae at 14-15 (emphasis added).

[9] While the threat of the consequences of wrongfully denying an insured's claim might provide incentive to insurers to act in good faith as a matter of policy, that argument ignores the fact the duty of good faith is separate from the duty to pay for a claim when required to do so. Contrary to American States' and amicus Insurance

Case 1:04-cv-10736-NMG    Document 34    Filed 12/06/2005    Page 16 of 18

Westlaw.
961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
(Cite as: 136 Wash.2d 269, 961 P.2d 933)

Page 7

Companies' assertions, an insured receives more for its premium than just the possibility its claim will be covered when appropriate. In the relationship between the insured and insurer, the insurer receives both the premium and control over the arrangement. In first party situations, the insurer establishes the conditions for making and paying claims. The **939 insurer evaluates the claim, determines coverage, and assesses the monetary value of the coverage. Thus, *283 the insurance contract brings the insured a certain peace of mind that the insurer will deal with it fairly and justly when a claim is made. [FN5] Conduct by the insurer which erodes the security purchased by the insured breaches the insurer's duty to act in good faith. *See* William M. Shernoff et al., *Insurance Bad Faith Litigation* § 3.04[5], at 3-26 (1991).

> FN5. As the Arizona Supreme Court noted in *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), the insurance industry itself lends credence to the fact the insureds seek more than a bare promise to pay certain claims. "Advertising programs portraying customers as being 'in good hands' or dealing with a 'good neighbor' emphasize a special type of relationship between the insured and the insurer--one in which trust, confidence and peace of mind have some part." *Rawlings,* 151 Ariz. at 155 n. 3, 726 P.2d 565.

The record establishes that Coventry incurred certain expenses as a result of American States' bad faith investigation. For example, Coventry hired geotechnical and civil engineers to review the facts and circumstances surrounding the incident causing damage to the construction site. Coventry also hired insurance experts to determine if coverage was denied in bad faith. To the extent Coventry can establish it incurred expenses as a direct result of American States' breach of contract and bad faith actions, it was harmed.

*Issue # 3--What Remedies are Available to an Insured if its Insurer Has Acted in Bad Faith?*

[10] Once an insured has established harm resulting from the bad faith investigation, the insured is entitled to an appropriate remedy. Coventry argues coverage by estoppel is the appropriate remedy because it gives insurers a strong disincentive to act in bad faith and protects the insured from such conduct. In the alternative, Coventry suggests it is entitled to recover "the portion of the premium it paid to American States for claims administration" because American States should not be entitled to collect a premium, act in bad faith in using a portion of that premium, and then retain the entire premium amount. Pet. for Review at 20.

*284 American States asserts that Coventry is not entitled to either a return of a portion of its premium payment or coverage by estoppel. With regard to a return of a portion of the premium paid, American States argues that "[h]arm based upon a computation of the value of services from the insurer is entirely speculative." Resp't Answer to Pet for Review at 18. With regard to coverage by estoppel, American States argues that coverage by estoppel arises only in third party reservation of rights cases.

[11] Because actionable bad faith is a tort, a plaintiff should not be limited to the economic damages within the contemplation of the parties at the time the contract was made. *Safeco Ins.,* 118 Wash.2d at 393-94, 823 P.2d 499. In *Safeco Ins.,* a third party reservation of rights case, we held coverage by estoppel was the appropriate remedy. *Safeco Ins.,* 118 Wash.2d at 392, 823 P.2d 499. we also indicated that coverage by estoppel was appropriate in bad faith cases where coverage was appropriately denied, stating, "an insurer who acts in bad faith should be estopped from denying coverage, even where an otherwise good policy defense exists." *Safeco Ins.,* 118 Wash.2d at 393, 823 P.2d 499 (citing 1 Windt, *supra,* § 2.02, at 27-28). The issue here is whether the same reasoning applies in the first party context.

[12] We hold coverage by estoppel in the first party context is not the appropriate remedy because, unlike third party reservation of rights cases, the loss in the first party situation has been incurred before the insurance company is aware a claim exists. Furthermore, an insurer is not liable for the policy benefits but, instead, liable for the consequential damages to the insured as a result of the insurer's breach of its contractual and statutory obligations. In third party reservation of rights cases, though, coverage by estoppel is an appropriate remedy because the insurer

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

961 P.2d 933
136 Wash.2d 269, 961 P.2d 933
**(Cite as: 136 Wash.2d 269, 961 P.2d 933)**

Page 8

contributes to the insured's loss by failing to fulfill its obligation in some way. This contribution to loss is particularly true when acts of the insurer have led the insured to believe it is covered under the terms of the policy. *See* 1 Windt, *supra,* **940 §§ 2.03, 2.05 (insurer's breach of its duty to investigate *285 should not result in the insurer being estopped from denying coverage). This difference between third party cases and first party cases warrants different remedies.

We hold Coventry is not entitled to coverage by estoppel or a return of a portion of its premium but that its damages are limited to the amounts it has incurred as a result of the bad faith investigation, as well as general tort damages. The record before us establishes that Coventry was required to go through some financial expense as a result of the bad faith investigation conducted by American States. These expenses include the cost of hiring their own experts and investigators to determine if American States should have covered the claim. To that extent, Coventry is entitled to make a claim for those amounts and damages normally associated with bad faith and CPA violations. Coventry must, like every other plaintiff, establish those damages at trial.

CONCLUSION

American States violated its duty of good faith and fair dealing in investigating Coventry's claim. Although coverage was eventually shown to be excluded under the policy, American States still breached its contract with Coventry by acting in bad faith and, thus, harming Coventry. As such, Coventry is entitled to bring actions for bad faith and violation of the CPA. Coventry is not entitled, however, to coverage by estoppel or return of a portion of the premium paid. Rather, Coventry's damages should be limited to its expenses as a result of American States' bad faith acts and ensuing tort and CPA damages.

Reversed and remanded.

DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, SANDERS, JJ., concur.

DURHAM, Chief Justice, concurring.

I agree with the majority that neither a presumption of harm nor coverage by estoppel *286 applies when an insurer conducts a bad faith investigation of a first-party insured's claim. I write separately to clarify that actual harm remains an essential element of a cause of action for bad faith handling of an insurance claim.

The majority identifies the first issue as whether a first-party insured may state a bad faith or Consumer Protection Act (RCW 19.86) (CPA) cause of action in the absence of coverage. In my view, this is a nonissue because the Court of Appeals decision below recognizes that a first-party insured may maintain a bad faith or CPA claim in the absence of coverage where the bad faith investigation actually harms the insured. *Coventry Assocs. v. American States Ins. Co., 86 Wash.App. 845, 851, 939 P.2d 1245 (1997)* ("We hold that an insured may not bring a bad faith or Consumer Protection Act claim based on procedural errors or shortcomings in an insurer's investigation unless the insurer wrongfully denies the claim *or the errors harm the insured.*" (emphasis added)). The majority, in resolving this nonissue, states that when an insurer breaches its duty to act in good faith, "a cause of action exists." Majority at 938. At first blush, it might appear that the majority is suggesting that insurer bad faith alone is actionable.

Yet, the majority correctly observes that harm is an essential element of both bad faith and CPA causes of action and that the Plaintiff is entitled to recover only to the extent it can establish that it incurred expenses as a direct result of any bad faith on the part of the Defendant. Majority at 935-936, 939. Therefore, when an insurer breaches its duty to act in good faith, a cause of action exists only if such bad faith causes resulting harm to the insured. Because there are unresolved questions of fact as to whether the Defendant acted in bad faith and, if so, whether the Plaintiff suffered resulting harm, I agree with the majority that summary judgment was improperly granted.

136 Wash.2d 269, 961 P.2d 933

**Briefs and Other Related Documents (Back to top)**

• 1998 WL 34348143 (Appellate Brief) Brief of Amicus Curiae Certain Underwriters at Lloyd's, London and London

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

961 P.2d 933                                                                                                              Page 9
136 Wash.2d 269, 961 P.2d 933
**(Cite as: 136 Wash.2d 269, 961 P.2d 933)**

Market Insurance Companies (May. 18, 1998)Original Image of this Document (PDF)

• 1998 WL 34348144 (Appellate Brief) Brief of Amici Curiae (May. 18, 1998)Original Image of this Document (PDF)

• 1998 WL 34347865 (Appellate Brief) Supplemental Brief of Petitioner (Mar. 24, 1998)Original Image of this Document with Appendix (PDF)

• 1998 WL 34347866 (Appellate Brief) Respondent's Supplemental Brief (Mar. 24, 1998)Original Image of this Document (PDF)

• 1997 WL 33812931 (Appellate Brief) Supplemental Brief of Respondent/Cross-Appellant (Mar. 28, 1997)Original Image of this Document (PDF)

• 1997 WL 33812930 (Appellate Brief) Supplemental Brief of Appellant (Feb. 28, 1997)Original Image of this Document (PDF)

• 1996 WL 33679264 (Appellate Brief) Reply Brief of Appellant (May. 17, 1996)Original Image of this Document (PDF)

• 1996 WL 33679263 (Appellate Brief) Brief of Respondent/Cross-Appellant (Apr. 19, 1996)Original Image of this Document with Appendix (PDF)

• 1996 WL 33679262 (Appellate Brief) Brief of Appellant (Mar. 04, 1996)Original Image of this Document (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.