UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10736 (NMG)

| | |
|---|---|
| AMERICAN PROCESS EQUIPMENT COMPANY, INC. | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| ATLANTIC MUTUAL INSURANCE COMPANY | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MOTION TO SUBMIT FURTHER
EVIDENCE ON ITS BUSINESS INTERRUPTION CLAIM**

Plaintiff American Process Equipment Company, Inc. ("plaintiff" or "APEC") hereby moves this Honorable Court to permit plaintiff to introduce additional evidence in support of its business interruption claim. In further support of this Motion, plaintiff states as follows:

1. During the direct examination of plaintiff's principal, Paul O'Neill, Jr., this Court sustained defendant's objection, without prejudice, relative to plaintiff's testimony about its lost profits in support of plaintiff's business interruption claim. In support of its objection, defendant argued that plaintiff's lost profits were not part of its claim.

2. A review of plaintiff's proof of loss, applicable portions of the insurance policy,

plaintiff's complaint, defendant's answer, and plaintiff's statement of the case in its section of the Pre-Trial Memorandum clearly show that plaintiff has pending before this jury for decision a claim for lost business income.

**The Proof Of Loss**

3. The proof of loss submitted by plaintiff in mid-2002 to Atlantic Mutual included a claim for lost profits. The last page of the spreadsheet attached to the proof of loss included a claim for APEC's "loss of revenue" and stated that as a result of the casualty APEC had "experienced a radical dropoff of sales". A copy of the relevant section of the proof of loss is attached hereto as Exhibit 1; *see also* trial exhibits 10 (plaintiff's letters of May 7, 2002 to Atlantic Mutual stating its claim (to that date) for "business inconvenience" (*i.e.*, interference); 17 (plaintiff's letter of August 1, 2002 claiming costs for having to re-do customer work); 32 (itemization of business costs charged to plaintiff as a result of subcontracting out work); exhibit 34 (same).[1] Also, defendant's argument that plaintiff did not submit a claim for future lost income turns logic on its head, since there is no conceivable way plaintiff could predict – at the time of submitting its proof of loss (July 18, 2002) – the amount, if any, of its future losses of revenue and income. In fact, the insurance policy recognizes that a loss of income claim is prospective in its description of what is covered under the lost business income provision of

---

[1] All of these exhibits 10, 17, 32 and 34 are a measure of business income loss. *See* Policy, trial exhibit 2, at p. 5 of 45 (Atlantic Mutual will pay "extra expenses" during business interruption).

2

the policy: "[w]e will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'Operations' during the "Period of Restoration.'" The policy defines the "Period of Restoration" as the period of time that "[b]egins with the date of the direct physical loss . . . [and] ends on the date when the property at the described premises [the Hingham premises] should be repaired, rebuilt or replaced." Because defendant has refused to cover plaintiff's claim that would have enabled plaintiff to repair or replace its damaged machines, the period of restoration and, thus, plaintiff's business income claim is on-going. The applicable sections of the policy are attached hereto as Exhibit 2.

**The Complaint And Defendant's Answer**

4. Moreover, by denying plaintiff's property damage claim, defendant necessarily also denied any claim plaintiff had for Business Income, since lost business income is <u>only</u> <u>recoverable</u> if it is caused by direct physical loss of or damage to property. Thus, plaintiff's <u>only</u> recourse to recover its lost business income was by filing this lawsuit.

5. Accordingly, in the complaint plaintiff alleged that as a result of the casualty and the damage to its machines, plaintiff has suffered business interruption damages (*i.e.*, lost profits). *See* Complaint at ¶10 (the "Policy provides coverage for the property and business interruption loss and damage claimed herein, and APEC is entitled to the full limits of the Policy") and ¶12 ("the loss described herein for property and business interruption loss and damage is a covered and insurable loss

3

under the Policy"). Moreover, even defendant acknowledged that this is part of plaintiff's claim in its answer and counterclaim: "APEC also alleged that it had suffered lost revenue . . ." *See* Counterclaim at ¶7.

**The Pre-Trial Memorandum**

6. Finally, in plaintiff's section of the pre-trial memorandum, APEC identified its business interruption claim and identified its lost revenues as a result of the casualty. Specifically, APEC identified lost income on specific, on-going jobs, and also asserted that its post-casualty revenues had decreased significantly as a result of the casualty. *See* Pre-Trial Memorandum at 6-7.

7. The record is clear in this case that plaintiff has pending before this Court a claim for its lost business revenues, and that defendant has never moved to strike that claim, limit that claim or for judgment on that claim -- rather, defendant has acknowledged that the claim is pending. Accordingly, plaintiff should be permitted to present its evidence concerning its lost income as a result of the casualty at issue in this lawsuit.

Respectfully submitted,

American Process Equipment
Company, Inc.,

By its attorneys,

_____
David L. Kelston, BBO #267310
Noah Rosmarin, BBO #630632
Adkins, Kelston & Zavez, P.C.
90 Canal Street, Fifth Floor
Boston, MA 02214
(617) 367-1040

Dated: December 13, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party ~~by mail~~ (by hand) on this date 12/13/05

_____

5

| **Loss of Revenue Claim** |
|---|
| APEC has consistently had revenues of $1,600,000 over the last three years. During the second quarter of 2002, concurrently with the casualty of water damage, APEC experienced a radical dropoff of sales. The sales for April through July amount to less than $70,000 where they should have been in the vicinity of $400,000. This is a net difference of $330,000 for second quarter |
| **Interruption of Work, Damage to Work-in-Process** |
| APEC has in process a number of contracts for Amtrak. Much of this work is for the rehabilitation of Pelham Bay Bridge and Niantic River Bridge. Many items which are already manufactured have been damaged by water and will need repair or replacement. It is estimated that the amount of repair and replacement is in excess of $400,000. |
| APEC has needed to redesign a machine which was in process due to production capabilities being damaged This claim amounts to $56,000 for redesign and manufacturing in a different arrangement the Versa-Table Blade-Mill |

   c. However, Covered Property does not include:
- (1) Automobiles held for sale;
- (2) "Money";
- (3) "Securities";
- (4) Contraband, or property in the course of illegal transportation or trade;
- (5) Vehicles or self-propelled machines (including automobiles, aircraft, or watercraft) that:
    - (a) Are licensed for use on public roads; or
    - (b) Are operated principally away from the described premises.

    This paragraph does not apply to:
    - (a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;
    - (b) Vehicles or self-propelled machines, other than autos, you hold for sale;
    - (c) Rowboats or canoes out of water at the described premises;
- (6) Property more specifically covered under this or another form of this or any other policy, except as provided in the Property Conditions Other Insurance Clause;
- (7) Import shipments prior to discharge from an aircraft or import vessel or termination of the risk assumed by cargo underwriters; and
- (8) Export shipments after either being loaded on aircraft or export vessel or having come under the protection of cargo insurance.

3. **Business Income and Extra Expense Coverage**

    a. **Business Income**

    - (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "Operations" during the "Period of Restoration". The suspension must be caused by direct physical loss of or damage to property at:
        - (a) The described premises;
        - (b) Your new buildings while being built on or within 1000 feet of the described premises;
        - (c) Buildings you acquire at locations other than the described premises, intended for:
            - (i) Similar use as the building described in the Declarations; or
            - (ii) Use as a warehouse.

        The loss or damage must be caused by or result from a Covered Cause of Loss. If the damaged property is Covered Property under your Building or Business Personal Property Coverages, then the same Causes of Loss that apply to the property under those Coverages and under the loss circumstances apply to this Business Income Coverage. If the damaged property is not Covered Property under your Building or Business Personal Property Coverages, then the General Causes of Loss apply to this Business Income Coverage. With respect to loss of or damage to business personal property in the open or personal property in a vehicle, the described premises include the area within 1000 feet of the site at which the described premises are located. Your Business Income Coverage does not apply to any loss otherwise covered only under your Crime Coverages.

    - (2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
        - (a) The portion of the building which you rent, lease or occupy; and
        - (b) Any area within the building or on the site at which the described premises is located, if that area services or is used to gain access to the described premises.

    - (3) If the phrase **Optional Off Premises Business Income** appears in the Declarations, then the suspension may also be caused by direct physical loss of or damage to property which you own or which is in your care, custody or control anywhere else in the coverage territory. The loss or damage must be caused by or result from a Covered Cause of Loss.

    d. Miscellaneous tools and equipment, including their:
        (1) Accessories, whether or not attached, and
        (2) Spare parts that are specifically designed and intended for use in the maintenance and operation of other "Installation Tools and Equipment Property";

that you own, or that you do not own but that are in your care, custody or control.

However, this does not include:

    (1) Aircraft, watercraft, their equipment or parts; automobiles; dealers' demonstration equipment, machinery and vehicles; dirt bikes, house trailers, mobile homes, mopeds, motorcycles, motorized bicycles, tricycles or four-wheel all terrain vehicles; snowmobiles, trucks and vehicles primarily designed and licensed for road use; "Money" or "Securities";

    (2) Property while in caissons or underwater or while being used in underground mining, tunneling or similar operations;

    (3) Property you have loaned, rented or leased to others;

    (4) Property that is or will become a permanent part of any building or structure; or

    (5) Property held for sale.

9. "Media" means all forms of electronic, magnetic and optical tapes and discs, drums, cells, paper tapes and cards, or other storage devices, including the information recorded thereon.

10. "Money" means:
    a. Currency, coins and bank notes in current use and having a face value; and
    b. Travelers checks, register checks and money orders held for sale to the public.

11. "Operations" means your business activities occurring at the described premises, including the tenantability of the described premises. If the phrase **Business Income Excluding Rental Value** appears in the Declarations, "Operations" does not include the tenantability of the described premises.

12. "Outdoor Property" means
    a. Trees;
    b. Lawns;
    c. Shrubs; and
    d. Plants;

excluding those held for sale.

13. "Period of Restoration" means the period of time that:
    a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, and
    b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of Restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "Pollutants"

The expiration date of this policy will not cut short the "Period of Restoration".

14. "Perishable Goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.