## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN PROCESS EQUIPMENT COMPANY, INC., ) ) ) ) Plaintiff, ) ) v. ) ) ATLANTIC MUTUAL INSURANCE ) COMPANY ) ) Defendant. ) ) | Civil Action No. 04-10736 (NMG) |

### ATLANTIC MUTUAL'S MOTION FOR DIRECTED VERDICT ON APEC'S CLAIMS

Pursuant to Fed. R. Civ. P. 50, Defendant Atlantic Mutual Insurance Company ("Atlantic Mutual") hereby moves this Court for a directed verdict in its favor on all counts (Counts I, II, III) asserted against Atlantic Mutual in Plaintiff's Complaint. American Process Equipment Company, Inc. ("APEC") voided its policy of insurance by submitting to Atlantic Mutual knowingly fraudulent information about its Claim. The evidence presented at trial establishes that APEC committed fraud as a matter of law by submitting valuations in some instances of more than 1000% of their purchase price. Because fraud voided APEC's policy of insurance, Atlantic Mutual made a legally correct disclaimer of coverage. As such, the Court should grant a directed verdict in Atlantic Mutual's favor on APEC's declaratory judgment count, its breach of contract claim and its claim under M.G.L. c. 93A.

In further support of its Motion, Atlantic Mutual states as follows:

BOST1-874925-1

1. ***The Terms of the Insurance Policy Constitute the Contract between APEC and Atlantic Mutual***

The policy provides that if APEC was entitled to recover for its loss, its recovery would be based on the following policy terms:

    **C.    PROPERTY VALUATION AND LOSS PAYMENT**

    1. In the event of loss or damage covered by this policy, at our option we will either:
      a. Pay the value of lost or damaged property;
      b. Pay the cost of repairing or replacing the lost or damaged property plus any reduction in the value of that property due to the repairs;
      c. Take all or any part of the property at an agreed or appraised value; or
      d. Repair, rebuild or replace the property with other property of like kind and quality

...

(3) We will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced. You may make a claim on an actual cash value basis for loss or damage covered by this insurance on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if:

    (a) The lost or damaged property is actually repaired or replaced; and
    (b) You notify us to do so within 180 days after the date of loss or damage or some other reasonable period on which we agree in writing.

...

3. We will determine the value of your property based on one of the following methods:

  a. **Replacement Cost**
    (1) Replacement Cost means the cost to repair, rebuild, or replace the lost of damaged property with other property:

      (a) Of comparable material and quality;
      (b) Used for the same purpose; and
      (c) Without a deduction for depreciation.

...

  g. **Actual Cash Value**
    (1) Actual case value means replacement cost, as defined in **a.** above (Replacement Cost), minus depreciation.

    (2) We will value the following property on an actual cash value basis:
    ...

> (d) Any property that otherwise would be valued on a replacement cost basis, but for which repairs or replacements are not made as soon as reasonably possible...

APEC is not seeking to recover costs it incurred repairing or replacing the allegedly damaged equipment for which it seeks coverage. Accordingly, the appropriate measure for valuing APEC's machines is the "actual cash value." In fact, in APEC's Sworn Statement in Proof of Loss ("Proof of Loss"), APEC claimed $3,150,000 as the "actual cash value" of the damage of the allegedly damaged machines. See Exhibit 15 in Stipulated Exhibit Binder.

In Massachusetts, actual cash value is determined by the "broad evidence rule." Agoos Leather Cos. v. American & Foreign Ins. Co., 342 Mass. 603, 607 (1961). Factors to be considered in determining the actual cash value of each piece of equipment include:

1. The cost to replace the piece of equipment minus depreciation attributable to normal use and wear and tear, the age of the equipment and its obsolescence;

2. The purchase price of the piece of equipment;

3. The condition in which the property has been maintained; and

4. The market value of the property.

See 12 Couch on Insurance §175:33 (3d Ed.); see also Eagle Fire Ins. Co. of New York v. Snyder, 392 F.2d 570 (10th Cir. 1968).

### 2. *Fraud Can Be Determined as a Matter of Law*

While generally a question for the finder of fact, fraud can be determined as a matter of law. 16 A.L.R.3d 774 (a copy of is attached as Exhibit A); see also Cuetara Hermanos v. Royal Exchange Assur. Co., 23 F.2d 270 (1st Cir. 1927)(court upheld directed verdict for insurer on the ground of insured's fraud in representation of the value of loss when insured claimed loss of property totalling $51,835.07 and the actual value of the property was $29,058.98). A discrepancy between an overvaluation fixed in a proof of loss and the valuation of a property loss

determined by a verdict or factfinding, which is so large as to import fraud and is not explainable upon any rational basis disclosed by the facts and circumstances, renders recovery unsupportable and sufficiently establishes fraud to avoid the policy. 16 A.L.R.3d 774; see also Tenore v. American & Foreign Ins. Co., 256 F.2d 791 (7th Cir. 1958)(court held as a matter of law that the insured knowingly and willfully made a false statement of the value of the property in a proof of loss with an intention to defraud the insurer, and that no recovery could be allowed, upon evidence establishing that the proof of loss was sworn to and evaluated the stock at $ 78,698.34, that the highest valuation figure of two witnesses for the insured was $ 58,698.34 less than that figure, that many of the items were of a period or class or in a condition which made their value small, that the insured's evaluater gave as the valuation, in the preparation of the proof of loss, the catalog wholesale price of each article as a new item). Accordingly, when the disparity between the actual value of the destroyed property and the value stated by the insured in its proof of loss is so great as to "plainly evince an intent to deceive and defraud the insurer," such as there is in this case, the question of fraudulent intent is not one of fact for the jury to determine, but one of law for the court. 16 A.L.R.3d 774; see also Riley v. Aetna Ins. Co., 80 W. Va. 236 (1917)(where there is a disparity between the actual value of the property destroyed and the value stated by the insured in his proof of loss, so great as to show an intent to deceive and defraud the insurer, the question is not one of fact for the jury to determine, but one of law for the court).

According to the existing case law, the higher the percentage by which the value stated in the proof of loss exceeds the actual value of the property as found by the factfinder, the more likely fraud will be found. 16 A.L.R.3d 774. All cases with overvaluations in a proof of loss exceeding 1,000% of the actual value have been found fraudulent. 16 A.L.R.3d 774. "In the

4

instances in which the discrepancy between the valuation given in the proof of loss and the valuation of the property loss determined by the court is so large as to appear gross, unreasonable, or fantastic, the question of fraudulent intent becomes one of law for the court."
Id.

### 3.   *APEC's Overvaluation of Machinery in Its Proof of Loss Establishes Fraud as a Matter of Law*

In its Proof of Loss, APEC made a claim for property damage for 31 machines. In this proof of loss, Mr. O'Neill identifies the Actual Cash Value of the whole loss and damage to the property as $3,150,000 – exactly the policy limits of APEC's property insurance policy. The facts that have been established by the testimony and documentary evidence presented at trial show that APEC paid a pittance for many of the machines for which it seeks a tremendous and unsubstantiated windfall. APEC's representations as to the value of a machine was in many instances, in excess of 1,000% of the amount that APEC paid for a machine, and in some instances as high as 66,000% in excess of what it paid for the machines less than one year earlier.

For example, APEC makes a claim in its Proof of Loss for a Schiess Gear Hobber in November 2001 for $25,000. This machine remained in pieces at APEC's place of business in Hingham (the "Hingham Facility"). At no time did APEC fully assemble this machine. In APEC's Proof of Loss, APEC seeks $400,000 – a value 1,600% in excess of what it paid just months prior.

APEC makes a claim for a Meuser Horizontal Boring Mill with DRO in its Proof of Loss. APEC purchased this machine in May 2001 for $5,000. APEC brought that machine to the Hingham Facility, never fully assembled it, never used it on a job and never made any improvements to the machine. Yet, APEC seeks $150,000 for that machine – a value 3,000% in excess of what it paid less than one year prior to the alleged loss.

APEC makes a claim for the Landis Plain Cylindrical Grinder, which it purchased in June 2001 for $105. APEC never had any work for this machine and made only minor improvements to the machine. However, APEC's claim for this machine is $70,000 – a value of in excess of 66,000% of what it paid less than one year earlier.

Similarly, APEC seeks recovery in its Proof of Loss for an American Tool CNC Slant Bed Lathe. APEC also purchased this machine in June 2001 for $105. APEC never used this machine for any work. In fact, APEC never even bothered to make this machine operational at the Hingham Facility. However, again APEC makes a claim for $70,000 for this machine – a value again in excess of 66,000% of what it paid less than one year earlier. This same machine, which APEC claims was so valuable, was then abandoned at the Hingham Facility when it failed to sell at auction.

It is clear that the valuations APEC submitted for these machines establish fraud as a matter of law. APEC disregards the purchase price of its machines and simply seeks an undeserved windfall. See Joiner v Firemen's Ins. Co., 6 F. Supp. 103 (D. NC 1934) (overvaluation in a sworn proof of loss of personal property insured against fire by stating its value at the time of loss to be $ 650, whereas it cost $ 150 new, submitted for payment of the insured's claim by the insurer, constitutes a basis for a finding that a willfully false oath was made with the intention to deceive); Pogo Holding Corp. v. New York Property Ins. Underwriting Assoc., 467 NYS2d 872 (2d Dept. 1983)(ample evidence to support finding that insured misrepresented material facts in its proof of loss and examination under oath, so as to void fire insurance policy, where insured valued properties at $ 55,000, a figure approximately five times greater than the appraised value of the property set by insurer's appraiser and the price of the property when purchased by the insured just two years earlier). APEC inflated the values

for the machines in an effort to reach the $3,150,000 Policy limits. See Anibal v. Ins. Co. of North America, 82 NYS 600 (1903)(court found as a matter of law that innocent overvaluation was not supported by the evidence, and the purpose of the insured in grossly inflating the values stated in his proofs of loss was to enhance his damages as nearly as possible to the aggregate of his entire insurance, and that upon this evidence the conclusion was unavoidable that the insured was guilty of intentional and willful false swearing in his proofs of loss, that he so swore for the purpose of defrauding the company, and that therefore the policy was, by its terms, rendered void).

This is not a case of innocent overvaluation or mistake. Paul O'Neill testified at trial that he has a Bachelor of Science degree in Marine Engineering with a concentration in Computer Science, a Master's Degree from Dartmouth in Computer Science and an honorary degree from MIT. Mr. O'Neill testified that he could do the repair work to the machines for which he claims damage himself. He further testified that he spent three hundred (300) hours coming up with the figures he submitted in his Proof of Loss and stated that he would "stand behind" every valuation in the Proof of Loss. See Orenstein v. Star Ins. Co., 10 F.2d 754 (4th Cir. 1926)(overvaluation in proof of loss was more than a mere matter of opinion or judgment, it appearing that it was made by one having special knowledge of the property with the idea that the insurer, who was ignorant of the subject and had no equal means of information, should rely upon it, and that the value so stated was grossly excessive when considered in relation to the value found and insured's statement showed a fraudulent and willful intent and purpose to deceive).

### 4.    *APEC's Fraud Voided the Policy As a Matter of Law*

Under Massachusetts law, the interpretation of an insurance contract is not a question of fact for the jury, but rather a matter of law for the trial judge. M. DeMatteo Constr. Co. v.

Century Indem. Co., 182 F. Supp. 2d 146, 157 (D. Mass. 2001), citing Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Insurance contracts are to be construed "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." Id., quoting MacArthur v. Mass. Hosp. Serv., Inc., 343 Mass. 670, 672 (1962). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." Id., quoting Hyfer v. Metro. Life Ins. Co., 318 Mass. 175, 179 (1945).

The Policy at issue provides as follows:

**D.  Concealment, Misrepresentation Or Fraud**
This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property
4. A claim under this policy.

Because APEC committed fraud as a matter of law, APEC's policy is void as a matter of law. See Harold J. Warren, Inc. v. Federal Mutual Ins. Co., 386 F.2d 579 (1st Cir. 1967)(fire insurance policy was void as a result of the insured's fraudulent representations where the insured submitted inflated claims and sought payment for portions of the building that were not damaged; see also Morgan v Badger Mut. Ins. Co. 181 F. Supp 496 (D. Fla. 1960)(general rule of law with respect to sworn proofs of loss, that if such proofs contain false statements, known by the persons making them to be false, for the purpose of perpetrating a fraud, the entire policy of insurance will be voided and the person making the fraudulent statement will recover nothing under the policy; that this rule, while concededly harsh, is generally made a part of the insurance contract and held to be valid, and that "its purpose is obviously to insure that the parties will deal fairly and honestly with each other.")

8

It is well settled that "the furnishing to the insurers by the insured of a statement of values that he knows to be false, for the purpose of securing an advantageous position in the settlement of the loss, is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss." Bockser v. Dorchester Mutual Fire Ins. Co., 327 Mass. 473, 477 (1951)(insurance policy voided due to insured submitting false and inflated bills for repair costs)(citing Gechijian v. Richmond Ins. Co., 305 Mass. 132, 136 (1940)). Even in the event the APEC made misrepresentations concerning only part of its Claim, the Policy is void and Atlantic Mutual is under no obligation to pay any part of the Claim. See Pottle v. Liverpool & L. & G. Ins. Co., 108 Me. 401 (1911)(a false and excessive valuation on single articles or the whole property bars recovery under insurance policy); Austin v. Maine Farmers' Mut. F. Ins. Co., 126 Me. 478 (1927)(insured who falsely and knowingly in his sworn proof of loss puts a false and excessive valuation on a single article or the whole property displays a reckless disregard of truth and cannot recover on the policy); Mosrie v. Automobile Ins. Co., 105 W. Va. 226 (1928)(in an action to recover for the loss of several automobiles, a false and fraudulent claim with respect to one of the cars would preclude a right of recovery as to the others).

**5.   *Atlantic Mutual Did Not Breach the Policy or Commit a Violation of M.G.L. c. 93A Because APEC's Misrepresentations Voided the Policy.***

A directed verdict is appropriate on APEC claims for declaratory judgment, breach of contract claims and M.G.L. c. 93A because APEC voided the Policy as a matter of law by submitting a knowingly fraudulent proof of loss. See Cuetara Hermanos v. Royal Exchange Assur. Co., 23 F.2d 270 (1st Cir. 1927)(upholding directed verdict for insurer on grounds of

fraudulent proof of loss because merchandise actually worth $29,058.98 was valued by the insured at $51,835.07);

Further, because APEC voided the insurance policy when it submitted a fraudulent proof of loss and made additional material misrepresentations to Atlantic Mutual concerning its insurance claim, Atlantic Mutual was not required to pay APEC's claim. As such, APEC has no basis for its M.G.L. c. 93A claim. Employers Insurance of Wausau v. George, 41 Mass. App. Ct. 719 (1996) (an insurance company does not act unfairly or deceptively within the meaning of M.G.L. c. 93A by making a legally correct disclaimer of coverage).

## CONCLUSION

For the foregoing reasons, the Court should find that APEC voided the policy by committing fraud as a matter of law and grant Atlantic Mutual's Motion for a Directed Verdict on APEC's declaratory judgment claim, breach of contract claim and M.G.L. c. 93 A claim.

Respectfully submitted,

**ATLANTIC MUTUAL INSURANCE COMPANY**
By its attorneys,

John E. Tener (BBO# 563791)
John R. Bauer (BBO# 630742)
Nancy M. Cremins (BBO# 658932)
**ROBINSON & COLE LLP**
One Boston Place, 25th Floor
Boston, MA  02108-4404
(617) 557-5900

Dated: December 14, 2005

## CERTIFICATE OF SERVICE

I, Nancy M. Cremins, hereby certify that on December 14, 2005, I served a true copy of the foregoing upon plaintiff's counsel by hand.

_____
Nancy M. Cremins

11